No. 11-17365

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

————————————

## VICTOR RIVERA RIVERA, *et al.*,
### *Plaintiffs - Appellants,*

### v.

## PERI & SONS FARMS, INC.,
### *Defendant - Appellees.*

————————————

ON APPEAL FROM UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
CIVIL CASE NO. 3:11-cv-00118 (Honorable Robert C. Jones)

————————————————————————

## APPELLANTS' OPENING BRIEF

————————————————————————

Mark R. Thierman
**THIERMAN LAW FIRM, PC**
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Fax: (775) 703-5027

Matthew J. Piers
José Jorge Behar
**HUGHES SOCOL PIERS RESNICK & DYM, LTD.**
70 W. Madison Street, Suite 4000
Chicago, IL 60602
Tel: (312) 580-0100
Fax: (312) 580-1994

*Counsel for Appellants*

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITIES ..........................................................iv

STATEMENT OF JURISDICTION..............................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................2

STATUTORY, REGULATORY, AND CONSTITUTIONAL
PROVISIONS..........................................................................3

STATEMENT OF THE CASE ...................................................3

    A.  The Farmworkers' Claims ........................................4

    B. Peri's Motion to Dismiss...........................................6

    C. The District Court's Ruling .......................................8

STATEMENT OF FACTS ........................................................10

    A. Peri Never Reimbursed the Farmworkers for Travel,
    Immigration, Recruitment, And Other Work-Related
    Expenses And Paid Plaintiffs Below The Contractually
    Agreed-Upon Wage Rate ..........................................11

SUMMARY OF THE ARGUMENT .........................................15

STANDARD OF REVIEW........................................................18

ARGUMENT ............................................................................18

I.    The Minimum Wage Provisions of the FLSA Require
    Employers to Reimburse H-2A Workers for the Cost of
    Travel and Immigration Expenses During the First
    Week of Work ..............................................................18

i

A. An Employer May Not Require Its Employees To Incur Expenses For The Employer's Benefit If Those Expenses Reduce The Employees' Wage Below The FLSA's Minimum For A Given Week Of Work.........................................................22

B. An H-2A Worker's Travel And Immigration Expenses Are Primarily For The Benefit And Convenience Of The Employer And Must Be Reimbursed To The Employee If They Drop The Worker's Wage Below The FLSA Minimum For The First Week of Work .................27

C. Peri Was Required To Reimburse The Farmworkers' Inbound Travel And Immigration Expenses During Their First Week Of Work Because The Expenses Were Primarily For Peri's Benefit.........................................................33

    1. Travel And Immigration Expenses Are For Peri's Benefit.........................................................35

    2. The Fifth Circuit's Approach Is Inconsistent With The Controlling DOL Interpretations ....................38

    3. The District Court Erred By Failing To Construe The FLSA And The H-2A Regulations As "Mutually Supplementary" ...............................40

    4. Peri's Recruitment Fees Were Primarily For Its Benefit And Also Must Be Reimbursed .....................42

II.    The Farmworkers Stated Valid Claims Under Nevada Law........45

III.    The District Court Erred In Dismissing the Farmworkers' Breach of Contract Claims............................................48

IV.  The District Court Erred In Applying A Two-Year Statute
     of Limitations to All of the Farmworkers' Claims When
     Peri has the Burden of Proving its Affirmative Defense as to
     the FLSA Claims and When Some of the State Law Claims
     are Subject to a Four or Six-Year Statute of Limitations ............. 53

     A. A Three-Year Statute of Limitation Applies to the
        Farmworkers' FLSA Claims As Alleged in the Second
        Amended Complaint ................................................................... 54

     B. The Farmworkers' State Law Claims Are Not Limited
        To a Two-Year Limitations Period ........................................... 56

CONCLUSION ........................................................................................ 59

STATEMENT OF RELATED CASES ...................................................... 60

STATEMENT REGARDING ORAL ARGUMENT ................................. 61

CERTIFICATE OF COMPLIANCE ........................................................ 62

CERTIFICATE OF SERVICE ................................................................. 63

ADDENDUM ....................................................................... (Attachment)

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alvarez v. IBP, Inc.,* 339 F.3d 894 (9th Cir. 2003) ..................................54

*Arriaga v. Florida Pac. Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002) .......................................................................................... passim

*Auer v. Robbins,* 519 U.S. 452 (1997) ......................................................20

*Avila-Gonzalez v. Barajas*, No. 2:04CV567-FTM-33DNF, 2006 WL 643297 (M.D. Fla. Mar. 2, 2006) ...............................................19, 31, 44

*Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993) ..........................................26

*Bobadilla-German v. Bear Creek Orchards,* 641 F.3d 391 (9th Cir. 2011) ...................................................................................................23, 38

*Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697 (1945) ................................22

*Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234 (D. Nev. 2008) .........................................................................................................50

*Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393 (5th Cir. 2010) (en banc) ....................................................................9, 38, 39, 40

*Chevron U.S.A, Inc. v. Natural Resources Defense Council, Inc,* 467 U.S. 837 (1984) .......................................................................................19

*Christopher v. Smithkline Beecham Corp.*, 635 F.3d 383 (9th Cir. 2011) ...................................................................................................................20

*De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649 (E.D.N.C. 2004) ..................................................................19, 31

*Dent v. Cox Communications Las Vegas, Inc.*, 502 F.3d 1141 (9th Cir. 2007) ..................................................55

*Dobyns v. United States*, 91 Fed. Cl. 412 (2010) .........................17, 51, 53

*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005)................................18

*Donovan v. Crisostomo*, 689 F.2d 869 (9th Cir. 1982) ...........................26

*Erickson v. Pardus,* 551 U.S. 89 (2007) ...................................................49

*Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117 (E.D.N.C. 2011) ...................................................40

*Gordon v. City of Oakland,* 627 F.3d 1092 (9th Cir. 2010)..............22, 38

*Hardin v. Wal-Mart Stores, Inc.*, No. CIV-F-08-0617 AWI GSA, --- F. Supp. 2d ---, 2011 WL 1566023 (E.D. Cal. Apr. 25, 2011) ..................52

*Hinds Investments, L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011)..........18

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158 (2007) .................. ................................................................ 19, 20, 23

*Marshall v. Glassboro Service Ass'n, Inc.,*  1979 WL 1989 (D.N.J. Oct. 19, 1979) ............................................... 44

*Marshall v. Root's Rest., Inc.* 667 F.2d 559 (6th Cir. 1982) ...................24

*Martinez-Bautista v. D&S Produce*, 447 F. Supp. 2d 954 (E.D. Ark. 2006) ............................................... 19, 31

*McLaughlin v. Richland Shoe Co.,* 486 U.S. 128 (1988)........................54

*Medical Providers Fin. Corp. II v. New Life Centers*, LLC, No. 2:07-CV-1618-KJD-PAL, --- F. Supp. 2d ---, 2011 WL 835485 (D. Nev. March 4, 2011) ..................................................50

*Morales-Arcadio v. Shannon Produce Farms, Inc.*, No. 605CV062, 2007
WL 2106188 (S.D. Ga. July 18, 2007) ............................................. 19, 30

*Morante-Navarro v. T&Y Pine Straw, Inc.*, 350 F.3d 1163 (11th Cir.
2003) ....................................................................................................... 31

*Moreno-Espinosa v. J & J Ag Products, Inc.*, 247 F.R.D. 686 (S.D. Fla.
2007) ................................................................................................. 19, 30

*Morris v. Fresno Police Dept.,* No. 08-CV-01422-OWW-GSA, 2010 WL
289293 (E.D. Cal. Jan. 15, 2010) .......................................................... 56

*Napoles-Arcila v. Pero Family Farms, LLC*, No. 08-80779-CIV, 2009 WL
1585970 (S.D. Fla., June 4, 2009) ......................................................... 44

*Ojeda-Sanchez v. Bland Farms, LLC,* 2010 WL 3282984 (S.D. Ga. Aug.
18, 2010) .......................................................................................... 19, 30

*Perez-Benites v. Candy Brand, LLC*, --- F.Supp. ---, No. 1:07-CV-1048,
2011 WL 1978414 (W.D. Ark. May 20, 2011) .......................... 18, 30, 40

*Powell v. U.S. Cartridge Co.,* 339 U.S. 497 (1950) ................................... 41

*Prieur v. D.C.I. Plasma Ctr. Of Nev., Inc.* 726 P.2d 1372 (Nev. 1986) ... 47

*Ramos-Barrientos v. Bland,* 661 F.3d 587 (11th Cir. 2011) .23, 36, 37, 44

*Richardson v. Jones*, 1 Nev. 405 (1865) ................................................... 50

*Rivera v. Brickman Group, Ltd.*, No. 05-1518, 2008 WL 81570 (E.D.
Penn. Jan. 7, 2008) .............................................................................. 43

*Rosales v. Hispanic Employee Leasing Program, LLC*, No. 1:06-CV-877,
2008 WL 363479 (W.D. Mich. Feb. 11, 2008) ...................................... 31

*Salazar-Martinez v. Fowler Bros., Inc.*, 781 F. Supp. 2d 183 (W.D.N.Y
2011) ................................................................................. 19, 36, 30, 40

*Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988) ....................................................................................... 17, 52, 53

*Scott v. Infostaf Consulting, Inc.,* No. 2:09-CV-1175, 2009 WL 3734137, (W.D. Pa. Nov. 6, 2009) .......................................................... 52

*Skinner v. Switzer,* 562 U.S. ---, 131 S. Ct. 1289 (2011) ......................... 49

*Solis v. Washington,* 656 F.3d 1079 (9th Cir. 2011) ................................ 20

*Soper By and Through Soper v. Means,* 903 P.2d 222 (Nev. 1995) ........ 57

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002) ................................. 49

*Teoba v. Trugreen Landcare,* LLC, 769 F. Supp. 2d 175 (W.D.N.Y. 2011) ............................................................................................... 40

*Tregenza v. Great Am. Communications Co.,* 12 F.3d 717 (7th Cir. 1993) .............................................................................................. 55

*United States v. McGee,* 993 F.2d 184 (9th Cir. 1993) ............................ 55

*Yu G. Ke v. Saigon Grill, Inc.,* 595 F. Supp. 2d 240 (S.D.N.Y. 2008) ..... 24

## Constitutions

Nev. Const. Art. 15 § 16 .................................................................. passim

## Federal Statutes

8 U.S.C. § 1101(a)(15)(H)(ii)(a) ..................................................... 3, 11, 37
20 U.S.C. § 1331 ..................................................................................... 1
28 U.S.C. § 1291 ..................................................................................... 1
28 U.S.C. § 1332(d) ................................................................................ 1
28 U.S.C. § 1367 ..................................................................................... 1
29 U.S.C. § 203(m) ................................................................... 20, 21, 22
29 U.S.C. § 206 ..................................................................................... 22
29 U.S.C. § 216(b) .................................................................................. 1

29 U.S.C. § 255(a) ........................................................................ 17, 54

## Nevada Statutes

NRS 11.190(1)(b) ......................................................................... 17, 57
NRS 11.190(2)(c) ......................................................................... 17, 58
NRS 11.220 ................................................................................. 17, 58
NRS 608.040 ........................................................................... 5, 46, 48
NRS 608.050 ........................................................................... 5, 46, 48
NRS 608.100 ............................................................................... 46, 48
NRS 608.140 .................................................................................... 46
NRS 608.250 ............................................................................. passim
NRS 608.260 ............................................................................... 45, 58

## Regulations

20 C.F.R. § 655.122(f) ................................................................ passim
20 C.F.R. § 655.122(h) ............................................................... passim
20 C.F.R. § 655.122(l) ................................................................ passim
20 C.F.R. § 655.122(q) ................................................................ 12, 51
20 C.F.R. § 655.130 .......................................................................... 11
20 C.F.R. § 655.135 .................................................................... 35, 41
20 C.F.R. § 655.135(e) ........................................................ 12, 41, 51
20 C.F.R. § 655.135(h) ...................................................................... 12
20 C.F.R. §§ 655.135(j) ..................................................................... 43
20 C.F.R. §§ 655.135(k) .................................................................... 43
29 C.F.R. § 531.32 ...................................................................... 28, 29
29 C.F.R. § 531.32(a) .......................................................... 23, 26, 28
29 C.F.R. § 531.32(c) ................................................................. passim
29 C.F.R. § 531.35 ..................................................................... passim
29 C.F.R. § 578.3(c)(3) .................................................................... 54
29 C.F.R. § 531.3 ............................................................................. 28
29 C.F.R. § 531.3(d) ........................................................................ 23
29 C.F.R. § 531.32 ........................................................................... 28
29 C.F.R. § 778.217 ......................................................................... 34
8 C.F.R. § 214.2(h)(5)(vi) ......................................................... 36, 37
8 C.F.R. § 214.2(h)(5)(viii) ...................................................... 36, 37
8 C.F.R. § 214.2(h)(5)(xi)(A) ........................................................... 44

## Rules

Fed. R. App. P. 32(a)(5) .......................................................61, 62

Fed. R. App. P. 32(a)(6) .......................................................61, 62

Fed. R. App. P. 32(a)(7)(B) .......................................................61

Fed. R. App. P. 32(a)(7)(B)(iii) ...........................................61, 62

Fed. R. Civ. P. 8(a) .........................................................2, 17, 49

Fed. R. Civ. P. 9(b)....................................................................56

Fed. R. Civ. P. Rule 12(b)(6) ....................................................18

Fed. R. Civ. P. Rule 23(b)(3) ....................................................10

Ninth Circuit Rule 28-2.6.........................................................60

Ninth Circuit Rule 28-2.7...........................................................3

## Other Authorities

73 Fed. Reg. 77110 (Dec. 18, 2008) .........................................32

73 Fed. Reg. 78020 (Dec. 19, 2008) .........................................32

74 Fed. Reg. 13261 (Mar. 26, 2009) ........................................32

75 Fed. Reg. 6884 (Feb. 12, 2010) ...........................5, 16, 31, 32

Department of Labor, Wage-Hour Field Assistance Bulletin No. 2009-2, "Travel and Visa Expenses of H-2B Workers Under the FLSA," (August 21, 2009) .................................................................................. passim

Department of Labor, Wage-Hour Field Assistance Bulletin No. 2011-2, "H-2A 'Prohibited Fees' and Employer's Obligation to Prohibit Fees," (May 6, 2011) ....................................................................32, 35

NAC 608.100 ............................................................................46

Office of the Nevada Labor Commissioner, *State of Nevada 2011 Annual Minimum Wage Bulletin* (April 1, 2011) ................................46

# STATEMENT OF JURISDICTION

The district court had jurisdiction of Plaintiffs' Fair Labor Standards Act and supplementary state law claims pursuant to 29 U.S.C. § 216(b), 20 U.S.C. § 1331, 28 U.S.C. § 1332(d), and 28 U.S.C. § 1367. On July 27, 2011, the district court granted Defendant Peri & Sons Farms, Inc.'s Motion to Dismiss and ruled that Plaintiffs' Second Amended Complaint failed to state a claim upon which relief could be granted. ER 25-36.[1] On September 8, 2011, the district court entered final judgment on behalf of Peri & Sons Farms, Inc. ER 3-4. On October 4, 2011, Plaintiffs filed a timely notice of appeal. ER 1-2. This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] Citations to "ER" refer to Appellants' Excerpts of Record. Citations to "R._" refer to the corresponding district court docket entry and, when specified, page numbers in such citations refer to the district court's ECF pagination.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Whether an employer violates the minimum wage provisions of the Fair Labor Standards Act, the Nevada Wage and Hour Laws, and the Nevada Constitution by not reimbursing foreign guest workers for travel, immigration, and recruitment expenses necessarily incurred by the workers in relation to their employment, where non-reimbursement of those expenses pushes the workers' wages below the statutory minimum for the workers' first week of work.

2.      Whether a plaintiff adequately pleads a Nevada breach of contract claim, under Rule 8(a) of the Federal Rules of Civil Procedure, by alleging (1) the existence of a valid employment contract; (2) an employer's breach of several specific provisions of that employment contract; and (3) resulting damages.

3.      Whether the district court erred in concluding that all of Plaintiffs' claims are governed by a two-year statute of limitations period.[2]

---

[2] Each of these issues was raised during the parties' briefing of the motion to dismiss filed by Defendant-Appellee Peri & Sons Farms, Inc. *See* R.33 at 6-9 (minimum wage), 10-12 (breach of contract), 9-10 (statute of limitations). The district court ruled on these issues in its July 27, 2011 Order granting the motion to dismiss. ER 30-33 (FLSA

## STATUTORY, REGULATORY, AND CONSTITUTIONAL PROVISIONS

Pursuant to Ninth Circuit Rule 28-2.7, copies of pertinent statutes, regulations, rules, and constitutional provisions, as well as Department of Labor Field Assistance Bulletins, appear in the attached Addendum.

## STATEMENT OF THE CASE

Each year, Peri & Sons Farms, Inc. ("Peri") recruits hundreds of Mexican migrant workers through the federal government's H-2A visa program to work on its onion farm. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a). On February 16, 2011, eighteen of those workers filed this action, alleging that Peri systemically failed to pay wages and expenses owed to them under the Fair Labor Standards Act (the "FLSA"), the Nevada Wage and Hour Laws, the Nevada Constitution, and the workers' employment contracts. These plaintiffs (collectively, "the

---

minimum wage), 34-36 (Nevada minimum wage), 34 (breach of contract), 29 (statute of limitations). *See also* Statement of the Case *infra* at 3-10.

Farmworkers") sought to represent similarly-situated H-2A guest workers employed by Peri between February 16, 2005 and the present.[3]

## A.    The Farmworkers' Claims.

The Farmworkers challenge Peri's practice of requiring its migrant employees to pay the transportation, immigration, and recruitment expenses that H-2A regulations require Peri to bear. The Farmworkers allege that these expenses, which they incurred primarily for Peri's benefit and convenience, caused their wages to fall below the minimum prescribed by the FLSA, the Nevada Wage and Hour Laws, and Article 15, Section 16 of the Nevada Constitution. ER 16-17 ¶¶41-45; 19-21 ¶¶50-58. Pursuant to a well-accepted interpretation of the FLSA set forth by the United States Department of Labor ("DOL"), the Court of Appeals for the Eleventh Circuit, and numerous federal district courts, the Farmworkers ask Peri to reimburse them for these expenses to bring their first week's wages in line with the federal minimum wage. *See Arriaga v. Florida Pac. Farms, LLC*, 305 F.3d 1228, 1242-44 (11th Cir. 2002) (holding that the FLSA requires an employer to reimburse

---

[3] On March 7, 2011, the Farmworkers filed an Amended Complaint that added three named plaintiffs, but that otherwise made no substantive changes to the factual or legal allegations contained in the original complaint. R.4.

transportation and visa costs incurred by H-2A workers to the extent those costs reduce a worker's first week's wages below the federal minimum wage); Temporary Agricultural Employment of H-2A Aliens in the United States, 75 Fed. Reg. 6884, 6915 (Feb. 12, 2010) (DOL interpretation stating the same).

In addition, the Farmworkers allege that Peri breached the clear terms of the Farmworkers' employment contracts by consistently paying them at an hourly rate less than the "adverse effect wage rate" – the minimum hourly rate that employers may legally pay H-2A workers pursuant to DOL regulations. *See* ER 11-12 ¶¶22-23. The Farmworkers further allege that Peri breached the employment contracts by not reimbursing them for travel, immigration, recruitment, and work expenses. *See* ER 11-12 ¶¶20-21, 26.  They seek to recover the wages and expenses promised in their employment contracts pursuant to Nevada common law.[4] *See* ER 17-18 ¶¶46-49.

---

[4] Plaintiffs also seek all wages due and owing, as well as a penalty amounting to one-month worth of wages for each breached employment contract, as provided in NRS 608.040 & 608.050. ER 19-20 ¶¶50-54.

## B.    Peri's Motion to Dismiss.

On April 13, 2011, Peri filed a Motion to Dismiss, arguing that the Farmworkers failed to state claims upon which relief could be granted.[5] Specifically, Peri argued that there was "no basis in federal law" for the Farmworkers' claim that the FLSA obligated Peri to reimburse them for travel, immigration, and recruitment expenses during their first week of work or otherwise, and that the Farmworkers' parallel state law minimum wage claims were similarly unsupported by the Nevada Wage and Hour Laws and the Nevada Constitution. R.27 at 8, 11-13.  Peri further contended that the Farmworkers' breach of contract claims failed to state a claim upon which relief could be granted because they were "nothing more than an ill-conceived effort to recover the same personal travel and immigration reimbursement that they s[ought] under federal or state statutory law." R.27 at 10.  Peri's motion was entirely silent as to the Farmworkers' allegations that Peri consistently paid them at an hourly rate lower than the adverse effect wage rate

---

[5] In its Motion to Dismiss, Peri also argued that the district court should decline to exercise supplemental jurisdiction over the Farmworkers' state law claims because of a purported conflict with FLSA's "opt in" mechanism. R.27 at 13-14. The district court did not rule on that issue.

stipulated in their employment contracts. Finally, Peri argued that a two-year statute of limitations universally barred the Farmworkers' claims.

On May 16, 2011, the Farmworkers filed their opposition to Peri's Motion to Dismiss and simultaneously sought leave to file a Second Amended Complaint. The Farmworkers responded to Peri's motion by citing the wealth of case law holding that an H-2A employer must reimburse travel, immigration, and recruitment expenses during the first week of work if the failure to reimburse such expenses reduces the H-2A worker's wage below the required minimum. R.33 at 6. The Farmworkers also argued that Peri's statute of limitations argument was premature because Peri had the burden of pleading and proving an affirmative defense. *Id*. at 9-10. Next, the Farmworkers noted that their state law breach of contract claims were valid and viable regardless of whether the FLSA required Peri to reimburse the Farmworkers for travel, immigration, and recruiting expenses during their first week of work because Peri *never* reimbursed these expenses as required by the clearance orders. *Id*. at 10-11. Finally, the Farmworkers asserted that their breach of contract claims were valid because they alleged that Peri

failed to pay them at the agreed-upon adverse effect wage rate *throughout* their employment with Peri. *Id.* at 11.

The Farmworkers' proposed Second Amended Complaint added no new claims. Instead, it provided more detail about Peri's failure to pay the Farmworkers at the agreed-upon adverse effect wage rate and to reimburse the Farmworkers for work, travel, immigration, and recruitment expenses. ER 10 ¶¶15-18. In addition, the Second Amended Complaint added allegations about the size of the putative class and invoked the district court's jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  ER 6-7 ¶4; 13-14 ¶¶30-31.

On June 2, 2011, Peri filed an opposition to the Farmworkers' motion for leave to file a second amended complaint, arguing that the Court should deny the Farmworkers' motion because the proposed amendment would be futile. R.43. The arguments set forth in the motion mirrored those advanced in Peri's Motion to Dismiss. *Id.*

## C.    The District Court's Ruling.

Though Peri moved to dismiss Plaintiffs' Amended Complaint and did not move to dismiss Plaintiffs' proposed Second Amended Complaint, the district court, on July 27, 2011, granted Peri's Motion to

Dismiss *as to the Second Amended Complaint*. ER 27-28, 36. The district court first held that a two-year statute of limitations applied to the Farmworkers' "state and federal wage claims," and dismissed all such claims accruing before February 16, 2009. ER 29. Then, citing *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 400-01 (5th Cir. 2010) (en banc), the district court held that the FLSA does not require an H-2A employer to reimburse an H-2A worker's inbound travel and immigration expenses during their first week of work. ER 32. The district court refused to follow the approach taken by *Arriaga v. Florida Pacific Farms, LLC.*, 305 F.3d 1228 (11th Cir. 2002), and the multitude of other cases that have considered the issue, concluding that *Arriaga* incorrectly interpreted the FLSA regulations. ER 33.

Next, the district court dismissed the Farmworkers' breach of contract claims, stating that the Farmworkers did not plead specific breaches of their employment contracts. ER 34. In doing so, however, the district court either overlooked or ignored the Farmworkers' allegations that Peri never reimbursed them for travel and immigration expenses as required by the employment contracts or that Peri paid them at hourly rates below the adverse effect wage rate as also required

by the employment contracts. *Id.* Finally, the district court dismissed the Farmworkers' other state law claims because they relied on the same legal theory underlying Plaintiffs' FLSA claims. ER 34-36.[6]

On August 7, 2011, the Farmworkers filed a notice of intent not to amend their Second Amended Complaint. R.58. On August 24, 2011, they filed a motion asking the district court to enter judgment in Peri's favor. R.59. On September 8, 2011, the district court entered final judgment in Peri's favor. ER 3-4. On October 4, 2011, the Farmworkers filed a timely notice of appeal. ER 1-2.

## STATEMENT OF FACTS

The Farmworkers are Mexican citizens who contracted with Peri to work on the company's onion farm harvesting onions through the DOL's H-2A agricultural guest worker program. ER 7 ¶7. The Farmworkers allege that Peri consistently failed to pay them

---

[6] Although the question of class certification had not been presented, the district court, in its ruling on Peri's Motion to Dismiss, expressed skepticism that Plaintiffs could certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The district court knew nothing about Plaintiffs other than what was described in the Second Amended Complaint, yet the court nonetheless stated that "Plaintiffs will have a difficult time showing adequate representation of potentially thousands of foreign migrant workers under an opt-out procedure." ER 28 at n.2.

contractually-agreed upon wages and did not reimburse them for work, travel, immigration, and recruitment expenses as required by contract and by statute. ER 11-12 ¶¶21-23. The Farmworkers seek to recover the wages and expenses that Peri owes them.

> **A.    Peri Never Reimbursed the Farmworkers for Travel, Immigration, Recruitment, And Other Work-Related Expenses And Paid Plaintiffs Below The Contractually Agreed-Upon Wage Rate.**

Plaintiffs' Second Amended Complaint alleged that Peri recruited and hired the Farmworkers from their homes in Mexico to work as temporary agricultural workers on its Yerington, Nevada onion farm as part of the DOL's H-2A program, 8 U.S.C. § 1101(a)(15)(H)(ii)(a). ER 7 ¶7; 10 ¶15. The H-2A program allows employers in the agricultural industry to hire temporary guest workers from outside the United States when the employers are unable to secure sufficient workers from within this country. ER 8 ¶9.

Under the DOL's regulations implementing the H-2A program, Peri submitted to the DOL clearance orders describing the terms and conditions of the Farmworkers' employment. 20 C.F.R. § 655.130; ER 8-9 ¶¶10-13. The clearance orders also explicitly incorporated the DOL regulations at 20 C.F.R. § 655 Subpart B, making all requirements

imposed by the regulations terms of the Farmworkers' employment. ER 9 ¶¶13-14. The clearance orders served as employment contracts between the Farmworkers and Peri. 20 C.F.R. § 655.122(q); ER 8-9 ¶¶10-14. These contracts and the applicable DOL regulations required Peri to pay H-2A workers at an hourly rate called the "adverse effect wage rate" (which is higher than both the federal and Nevada minimum wage), comply with all federal and state employment-related laws and regulations, provide the H-2A workers, without charge, all tools and equipment necessary to perform the duties assigned, and provide or pay for transportation from the workers' residence to the employer's workplace and back again upon the end of the period of employment. 20 C.F.R. § 655.122(f), (h) & (l); 20 C.F.R. § 655.135(e) & (h); ER 8-9 ¶¶10-13.

Before the Farmworkers arrived at Peri's farm to begin working, they incurred numerous expenses for Peri's benefit. Peri's agents required many of the Farmworkers to pay a hiring or recruitment fee of between $100 to $500 per season to be considered for work on Peri's farm. ER 10 ¶15. Many of the Farmworkers had to purchase a Mexican passport to travel to the United States to work for Peri, and all of the

Farmworkers had to pay for travel expenses from their homes to the United States Consulate in Hermosilla, Sonora, Mexico to apply for H-2A visas. *Id.* ¶16. In addition, the Farmworkers paid for lodging in Hermosilla while their visas were processed and paid the fees associated with their visa applications. *Id.* Finally, the Farmworkers paid a fee to obtain a Form I-94, which is a prerequisite to entering the United States, and paid for their own transportation from the Mexico-United States border to Peri's farm. *Id.* ¶17. In total, each of the Farmworkers paid more than $400 in visa and travel expenses each time that they traveled to work at Peri's farm. *Id.* ¶18. Peri *never* reimbursed the Farmworkers for any of these pre-employment expenses, which, as alleged in the Second Amended Complaint, were incurred by the Farmworkers primarily for Peri's benefit. ER 11 ¶21.

The Farmworkers also incurred travel expenses when their work contract expired. The Farmworkers paid for transportation back to their homes in Mexico and incurred lodging and subsistence expenses during the course of that return trip. ER 12 ¶26. Peri never fully reimbursed the Farmworkers for the necessary expenses that they incurred when traveling home to Mexico. *Id.*

13

During the period of their employment, Peri further failed to pay the Farmworkers for all of the hours that they worked and did not reimburse them for the expense of the gloves they had to purchase in order to perform the work. ER 11-12 ¶¶20, 25.

In sum, Peri breached the clear and express terms of the parties' employment contracts in a number of different ways:

- by paying the Farmworkers at an hourly rate that was less than the agreed-upon adverse effect wage rate (ER 11 ¶22);

- by not paying the Farmworkers for all hours worked (ER 12 ¶25);

- by not reimbursing the Farmworkers for travel and immigration expenses that they incurred en route to Peri's farm and for Peri's benefit (ER 11 ¶21);

- by not reimbursing the Farmworkers for gloves that were required to perform work on Peri's farm (*Id.* ¶20); and

- by not fully reimbursing the Farmworkers for travel expenses associated with their return trip to Mexico (ER 12 ¶26).

Because Peri did not reimburse the Farmworkers for travel, immigration, and recruiting expenses that the Farmworkers incurred

for Peri's benefit, the Farmworkers earned far less than the federal and state minimum wage during their first week of work. *Id.* ¶24. In addition, Peri's wholesale failure to reimburse the workers for these expenses and for the cost of required work gloves, along with its practice of systemically underpaying the Farmworkers for their labor, caused the Farmworkers to earn far less than the amounts due to them under their employment contracts. Indeed, between February 16, 2005 and the date the Second Amended Complaint was filed, Peri paid the Farmworkers as little as $6.50 and $6.75 an hour when the adverse effect wage rate was no less than $8.36 an hour and as much as $10.06 an hour during that same time period, consistently underpaying them about 24 to 35% of the wages due. ER 11 ¶¶22; 18 ¶¶48-49.

## SUMMARY OF THE ARGUMENT

The district court made at least three critical errors in dismissing Plaintiffs' Second Amended Complaint. First, it erred in concluding that neither the FLSA nor the Nevada Wage & Hour laws required Peri to reimburse the Farmworkers' travel, immigration, and recruitment expenses during their first week of work. In so holding, the district court ignored a wealth of contrary and well-reasoned authority,

15

including *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1242-1244 (11th Cir. 2002), and controlling interpretive rules issued by the DOL. *See* Temporary Agricultural Employment of H-2A Aliens in the United States, 75 Fed. Reg. 6884, 6915 (Feb. 12, 2010). It also misinterpreted and misapplied the applicable DOL regulations by failing to determine whether the travel, immigration, and recruitment expenses were primarily for Peri's benefit (as alleged in the Second Amended Complaint) and extended its flawed interpretation of the FLSA to the Farmworkers' state law claims.

Second, the district court erred in dismissing the Farmworkers' breach of contract claims because the Farmworkers purportedly did not "plead specific breaches" of their employment contracts. To the contrary, the Farmworkers' Second Amended Complaint alleged very specifically: (1) that the Farmworkers contracted with Peri through DOL clearance orders to work on Peri's onion farm, (2) that Peri agreed in those contracts to reimburse the Farmworkers for travel, immigration, and work expenses and to pay the Farmworkers at the adverse effect wage rate, (3) that the Farmworkers worked on Peri's farm, but Peri nevertheless refused to reimburse the Farmworkers for

travel, immigration, and work expenses or pay the Farmworkers at the adverse effect wage rate, and (4) that the Farmworkers suffered resulting damages. Under Rule 8(a) of the Federal Rules of Civil Procedure, these allegations were more than sufficient to state a claim for breach of contract. *See, e.g., Dobyns v. United States*, 91 Fed. Cl. 412, 430 (2010); *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437-38 (6th Cir. 1988).

Finally, the district court erred by holding that all of the Farmworkers' claims are governed by a two-year statute of limitations. The Farmworkers alleged that Peri willfully violated the FLSA, thus triggering a three-year statute of limitations period. 29 U.S.C. § 255(a). In addition, the Farmworkers' state law claims under Article 15, Section 16 of the Nevada Constitution are governed by a four-year statute of limitations, NRS 11.190(2)(c) & 11.220, and their state law breach of contract claims are governed by a six-year statute of limitations.  NRS 11.190(1)(b). The Farmworkers were not required to plead around Peri's potential statute of limitations defense.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's ruling on a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). The Court must construe "the complaint in the light most favorable to the plaintiff and accept[ ] all factual allegations as true." *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

## ARGUMENT

## I.   THE MINIMUM WAGE PROVISIONS OF THE FLSA REQUIRE EMPLOYERS TO REIMBURSE H-2A WORKERS FOR THE COST OF TRAVEL AND IMMIGRATION EXPENSES DURING THE FIRST WEEK OF WORK.

Until the district court issued its ruling in this case, no fewer than nine courts from four different jurisdictions were unanimous in holding that "employers are obligated to reimburse travel and immigration-related costs to temporary foreign [H-2A] guest workers if the costs reduce the workers' wages below the federal minimum wage during the first work week." *Perez-Benites v. Candy Brand, LLC*, --- F.Supp. ---, No. 1:07-CV-1048, 2011 WL 1978414, at *13 (W.D. Ark. May 20, 2011). *See Arriaga* 305 F.3d at 1242-44; *Salazar-Martinez v. Fowler Bros., Inc.*, 781 F. Supp. 2d 183, 194-95 (W.D.N.Y 2011); *Ojeda-Sanchez v. Bland*

*Farms, LLC,* 2010 WL 3282984, at *9 (S.D. Ga. Aug. 18, 2010); *Morales-Arcadio v. Shannon Produce Farms, Inc.*, No. 605CV062, 2007 WL 2106188, at *16-17 (S.D. Ga. July 18, 2007); *Moreno-Espinosa v. J & J Ag Products, Inc.*, 247 F.R.D. 686, 689 (S.D. Fla. 2007); *Martinez-Bautista v. D&S Produce*, 447 F. Supp. 2d 954, 963-64 (E.D. Ark. 2006); *Avila-Gonzalez v. Barajas*, No. 2:04CV567-FTM-33DNF, 2006 WL 643297, at *3 (M.D. Fla. Mar. 2, 2006); *De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649, 661 (E.D.N.C. 2004).

Despite this clear authority and despite the controlling DOL interpretations, the district court rejected this long-established approach in favor of its own misguided reading of the FLSA and the DOL's implementing regulations.[7] As the DOL and the numerous courts

---

[7] The DOL regulations cited herein are entitled to controlling deference. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165 (2007) (*quoting Chevron U.S.A, Inc. v. Natural Resources Defense Council, Inc,* 467 U.S. 837, 843-44 (1984)) (holding that DOL regulations are legally binding when reasonable and issued according to proper procedure); *Auer v. Robbins,* 519 U.S. 452, 457 (1997) (holding that when a statute is silent on the precise issue before the court, the court must defer to an agency's regulation so long as it is based on a permissible construction of the statute). *Cf. Christopher v. Smithkline Beecham Corp.*, 635 F.3d 383, 392-94 (9th Cir. 2011) (holding that the deference generally owed to DOL regulations does not apply when the regulations merely restate the statutory language). In addition, the DOL interpretations cited herein also are entitled to controlling

cited above have recognized, an analysis of whether the FLSA obligates an employer to reimburse H-2A workers for pre-employment expenses begins with Section 203(m) of the FLSA. *See e.g. Arriaga,* 305 F.3d at 1236; DOL, Wage-Hour Field Assistance Bulletin No. 2009-2, "Travel and Visa Expenses of H-2B Workers Under the FLSA," at 11 n.5 (August 21, 2009) (hereinafter "Field Assistance Bulletin 2009-2") ("we believe that the *Arriaga* court correctly relied upon the section 3(m) principle…as that principle is interpreted in both § 531.32 and § 531.35"). The regulations interpreting Section 203(m), taken together, make clear that an employer may not require an employee to incur expenses that are for the employer's primary benefit and convenience when those expenses reduce the employee's wages below the federal minimum. *Id.*; 29 C.F.R. §§ 531.32(c) (stating that expenses "primarily for the benefit and convenience of the employer" may not count toward wages) & 531.35 (prohibiting "kick-backs" and incorporating by reference the "primarily for the benefit and convenience of the employer" standard into the definition of a kick-back).

---

deference. *Long Island Care at Home,* 551 U.S. at 165, 171 (DOL interpretations of its own regulations are controlling unless plainly erroneous or inconsistent with the regulations being interpreted); *Solis v. Washington,* 656 F.3d 1079, 1085 (9th Cir. 2011) (same).

The district court, however, did not evaluate whether the Farmworkers' travel, immigration and recruitment expenses were primarily for Peri's benefit and convenience, and its Order makes no mention of Section 203(m) of the FLSA. ER 30-33. Instead, the district court limited its analysis to only one part of the regulation prohibiting kick-backs and, based on a misreading of that regulation, held that the Farmworkers' claims were outside its scope. *Id.* Because the district court's ruling is inconsistent with the FLSA, the DOL's guidance, and the clear weight of the case law, this Court should reverse the district court.

### A.     An Employer May Not Require Its Employees To Incur Expenses For The Employer's Benefit If Those Expenses Reduce The Employees' Wage Below The FLSA's Minimum For A Given Week Of Work.

Congress enacted the minimum wage provision of the FLSA to protect employees "who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 n.18 (1945). Under the FLSA, employers must pay their employees at least the federal minimum wage for every week that they work "free and clear" of improper deductions. *Gordon v. City of Oakland,* 627 F.3d 1092, 1095 (9th Cir. 2010); 29 U.S.C. § 206; 29 C.F.R. § 531.35.

Section 203(m) of the FLSA provides a limited exception to the "free and clear" requirement and allows an employer to include as wages the "reasonable cost" of providing "board, lodging, or other facilities" if such items are customarily furnished by the employer to his employees. 29 U.S.C. § 203(m). For an employer to take a wage credit or deduction for providing "other facilities," the deduction "must be [for]

something like board or lodging." 29 C.F.R. § 531.32(a).[8] Such facilities generally constitute personal or living expenses, such as food, household goods, or utilities furnished for the employee's personal use. *See* 29 C.F.R. § 531.32(a). "[O]ther facilities" also include "transportation furnished employees between their homes and work where the travel time does not constitute hours worked compensable under the Act and the transportation is not an incident of and necessary to the employment." *Id.*

"[T]he cost of furnishing 'facilities' which are primarily for the benefit or convenience of the employer will not be recognized as reasonable" and cannot reduce a workers' compensation below the minimum wage. 29 C.F.R. §§ 531.3(d), 531.32(c). *See also Bobadilla-German v. Bear Creek Orchards,* 641 F.3d 391, 396 (9th Cir. 2011) (recognizing that an employer's attempt to take wage credit for seasonal worker housing would require primary benefit of the employer analysis under the FLSA); *Ramos-Barrientos v. Bland,* 661 F.3d 587, 597-98 (11th Cir. 2011) (holding that an employer cannot shift the cost of

---

[8] As stated *supra* at n. 7, these regulations are entitled to controlling deference. *See Long Island Care at Home,* 551 U.S. at 165 (2007).

lodging to H-2A workers because the lodging primarily benefits the employer).

If an employer requires an employee to pay for "facilities" (or any other expenses) that are primarily for the benefit or convenience of the employer, then the employer must reimburse the employee's expense if it drops the employee's wage below the minimum for a given workweek. 29 C.F.R. §§ 531.32(c), 531.35 & 531.36. *See also e.g.*, *Marshall v. Root's Rest., Inc.* 667 F.2d 559, 560 (6th Cir. 1982) (holding that an employer was required to reimburse the cost of uniforms purchased by employees); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (holding that an employer was required to reimburse the cost of bicycles and necessary repairs paid for by delivery workers because an "employee is entitled to a credit for expenses for 'facilities' that are 'primarily for the benefit or convenience of the employer'"). As the applicable regulations explain, an employer violates the FLSA "where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the

wage delivered to the employee" and those kick-backs reduce the employee's wage below FLSA's minimum. 29 C.F.R. § 531.35.[9]

Thus, when determining whether an employer's deduction reduces an employee's wage below FLSA's minimum, "[t]here is no legal difference between deducting a cost directly from the worker's wages and shifting a cost which [an employer] could not deduct, for the

_____

[9] The full text of the regulation provides:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. *See also in this connection,* §531.32(c).

29 C.F.R. § 531.35 (emphasis added). In discussing kick-backs, Section 531.35 cross-references Section 531.32(c), which provides that expenses that are primarily for the benefit of the employer may not count against the minimum wage. Taken together, these regulations make clear that any expense which is incurred primarily for the benefit and convenience for the employer is included in Section 531.35's definition of a kick-back.

employee to bear." *Arriaga,* 305 F.3d at 1236.[10]  "This is so because wages are not truly 'received' unless they are paid 'free and clear,'" and wages are not paid free and clear when an employer shifts a business expense to its employees by requiring them to purchase items primarily for its benefit.  *See* Field Assistance Bulletin 2009-2 at 2-3 (stating that such de facto deductions are not permitted by the FLSA when they reduce employee wages below the statutory minimum).

Generally, the FLSA regulations provide that a facility primarily benefits the employee–and therefore may be counted as wages–when it is a "personal expense that would arise as a normal living expense." *Arriaga,* 305 F.3d at 1228. For example, food, clothing, household goods, electricity, water, and gas furnished for personal use are considered "other facilities" that primarily benefit an employee. 29 C.F.R. § 531.32(a). On the other hand, facilities are primarily for the benefit of the employer if they are required by law or the nature of the job, or if

---

[10] An employer carries the burden of demonstrating that expenses that reduce wages below the statutory minimum are permissible. *Donovan v. Crisostomo*, 689 F.2d 869, 877 (9th Cir. 1982) (holding employer failed to show it was entitled to a set off for the cost of employee's food and lodging). The FLSA must "be liberally construed to apply to the furthest reaches consistent with Congressional direction" to protect employees. *Biggs v. Wilson*, 1 F.3d 1537, 1539-40 (9th Cir. 1993).

they result from the employer's business decision. These facilities
include:

> Safety caps, explosives, and miners' lamps…electric power
> (used for commercial production in the interest of the
> employer); company police and guard
> protection…transportation charges where such
> transportation is an incident of and necessary to the
> employment (as in the case of maintenance-of-way
> employees of a railroad)…medical services and
> hospitalization which the employer is bound to furnish under
> workmen's compensation acts, or similar Federal, State, or
> local law.

29 CFR § 531.32(c). Critically for this case, the regulations explicitly

provide that "transportation charges where such transportation *is*

*incident and necessary to the employment*" are primarily for the benefit

or convenience of the employer. *Id.* (emphasis added).

> **B.    An H-2A Worker's Travel And Immigration Expenses
> Are Primarily For The Benefit And Convenience Of
> The Employer And Must Be Reimbursed To The
> Employee If They Drop The Worker's Wage Below The
> FLSA Minimum For The First Week of Work.**

The Court of Appeals for the Eleventh Circuit was the first court

to hold that an H-2A worker's travel and immigration expenses are

primarily for the benefit of the employer and, therefore, may not be

shifted to a worker if they reduce the worker's wage below the FLSA's

required minimum. *Arriaga,* 305 F.3d at 1228. In *Arriaga*, the court

27

reviewed the applicable FLSA regulations to determine whether travel and immigration expenses incurred by H-2A workers are "other facilities," for purposes of Section 203(m), such that an employee may absorb them or, rather, are "primarily for the benefit and convenience of the employer," such that an employer must reimburse them. *Id*. at 1241-42. *See* 29 C.F.R. §§ 531.3, 531.32.

The court observed that the FLSA regulations describe two different categories of transportation expenses: one category that is considered "other facilities" for purposes of Section 203(m) and one category that is primarily for the benefit of the employer. *Arriaga*, 305 F.3d at 1241. The first category of transportation expenses, described in Section 531.32(a), includes daily commuting expenses between home and work. According to *Arriaga* and the applicable regulations, these kinds of transportation expenses are considered "other facilities" and can be included in the calculation of wages if they are provided free of charge by the employer. *Id*.; 29 C.F.R. § 531.32(a). The second category of transportation expenses includes those that are "incident of and necessary to the employment," such as the transportation expenses incurred by an employee who travels along a railroad to ensure its

proper maintenance. *Arriaga*, 305 F.3d at 1241; 29 C.F.R. § 531.32(c). *Arriaga* held that "[i]f the transportation charge falls into this [second] category, it does not constitute 'other facilities' and may not be counted as wages; the employer therefore would be required to reimburse the expense up to the point the FLSA minimum wage provisions have been met." *Arriaga*, 305 F.3d at 1241-42.

After identifying the two categories of transportation expenses, the court in *Arriaga* had little difficulty concluding that transportation expenses incurred by H-2A workers fit into the second category because they are "incident of and necessary to the employment." *Id*. at 1242. The court observed that "[t]ransportation charges are an inevitable and inescapable consequence of having foreign H-2A workers employed in the United States" and that "transportation will be needed, and not of the daily commuting type, whenever employing H-2A workers." *Id*. The court further observed that the examples of "other facilities" listed in Section 531.32 "show a consistent line being drawn between those costs arising from the employment itself and those that would arise in the course of ordinary life." *Id.* The court decided that an H-2A workers' long distance transportation costs from Mexico, or some other country,

to the United States are unlike daily commuting costs from home to work that arise in the course of ordinary life. *Id*. at 1242-43.

Lastly, the *Arriaga* Court concluded that an H-2A worker's visa costs, visa application fees, and immigration fees also are not "other facilities" because they are not ordinary living expenses and have no value for the H-2A worker outside the H-2A program. *Id*. at 1244. As such, the court held that these visa and immigration expenses were primarily for the benefit of the employer and could not be passed on to the workers. *Id*.

In the wake of *Arriaga*, at least eight district courts, from four different circuit jurisdictions, have followed the Eleventh Circuit's thorough analysis of the issue and have held that an employer must reimburse an H-2A worker's travel and immigration expenses during the first workweek if the failure to reimburse such expenses would reduce the worker's wages below the FLSA's required minimum. *See Perez-Benites*, 2011 WL 1978414 at *13; *Salazar-Martinez*, 781 F. Supp. 2d at 190-97; *Ojeda-Sanchez,* 2010 WL 3282984 at *9; *Morales-Arcadio,* 2007 WL 2106188 at *16-17; *Moreno-Espinosa,* 247 F.R.D. at 689;

*Martinez-Bautista*, 447 F. Supp. 2d at 963-64; *Avila-Gonzalez*, 2006 WL 643297 at *3; *De Luna-Guerrero*, 338 F. Supp. 2d at 661.[11]

Additionally, after *Arriaga*, the DOL issued a Final Rule approving *Arriaga*'s reasoning. *See* Temporary Agricultural Employment of H-2A Aliens in the United States, 75 Fed. Reg. 6884, 6915 (Feb. 12, 2010). The preamble to that Final Rule implementing changes to the H-2A program explicitly states, "an H-2A employer covered by the FLSA is responsible for paying inbound transportation costs in the first workweek of employment to the extent that shifting such costs to employees (either directly or indirectly) would effectively bring their wages below the FLSA minimum wage." *Id.* The Final Rule provides that visa fees "are integral to the employer's choice to use the H-2A program to bring foreign workers into the country. Such expenses provide no benefit to the employee other than for that particular limited

---

[11] *See also e.g. Morante-Navarro v. T&Y Pine Straw, Inc.*, 350 F.3d 1163, 1166 n.2 (11th Cir. 2003) (holding that an employer violates the FLSA by not reimbursing an H-2B worker's travel and immigration expenses during the first week of work); *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 125-27 (E.D.N.C. 2011) (same); *Teoba v. Trugreen Landcare*, LLC, 769 F. Supp. 2d 175, 184-86 (W.D.N.Y. 2011) (same); *Rosales v. Hispanic Employee Leasing Program, LLC*, No. 1:06-CV-877, 2008 WL 363479, at *1 (W.D. Mich. Feb. 11, 2008) (same); *Rivera v. Brickman Group, Ltd.*, No. 05-1518, 2008 WL 81570, at *11-13 (E.D. Penn. Jan. 7, 2008) (same).

employment situation." 75 Fed. Reg. at 6925.[12]  *See also* DOL, Wage-Hour Field Assistance Bulletin No. 2011-2, "H-2A 'Prohibited Fees' and Employer's Obligation to Prohibit Fees," at 3 (May 6, 2011) (same). DOL issued this interpretation following public notice and comment and careful consideration of DOL opinion letters dating back to 1960.

DOL Field Assistance Bulletin 2009-2, issued on August 21, 2009, also is instructive. In evaluating the identical issue in the context of the H-2B program, DOL stated that consistent with its "longstanding interpretation," travel and immigration-related expenses necessary for

---

[12] DOL issued the February 12, 2010 Final Rule after the agency intensively reviewed its policy on the concurrent obligations imposed by the FLSA and the regulations governing the H-2A program. On December 18, 2008, DOL had issued an H-2A Final Rule which stated in the preamble that the FLSA and its implementing regulations do not require employers to reimburse H-2A workers for relocation expenses even when these expenses result in workers being paid less than the minimum wage. *See* 73 Fed. Reg. 77110, 77148-52 (Dec. 18, 2008). *See also* 73 Fed. Reg. 78020, 78039-41 (Dec. 19, 2008) (same regarding H-2B workers). Three months later, DOL withdrew the interpretation, noting that DOL had not sought public comment on the Final Rule and believed the issue warranted further review due to its potential adverse impact on "our Nation's most vulnerable workers, including…guest workers." Withdrawal of Interpretation of the Fair Labor Standards Act Concerning Relocation Expenses Incurred by H-2A and H-2B Workers, 74 Fed. Reg. 13261-62 (Mar. 26, 2009). In withdrawing the 2008 Rule, DOL provided that the interpretation it set forth may not be relied upon as a statement of agency policy. *Id.* at 13262. DOL issued the 2010 Final Rule and Field Assistance Bulletin 2009-2 as a result of its review.

H-2B workers are for the primary benefit of their employers and must be reimbursed to workers in the first workweek if the costs reduce the employees' wages below the minimum wage. DOL Field Assistance Bulletin 2009-2 at 1, 9 n.3 (stating the analysis set forth in the bulletin must be applied in any circumstance where "an employee must travel for temporary employment from the point of hire to a distant worksite location").

These DOL interpretations provide a comprehensive, compelling and controlling analysis of the issue – an analysis ignored by the district court in granting Peri's Motion to Dismiss.

**C.  Peri Was Required To Reimburse The Farmworkers' Inbound Travel And Immigration Expenses During Their First Week Of Work Because The Expenses Were Primarily For Peri's Benefit.**

Although the district court acknowledged that "kick-backs" incurred during the first workweek must be counted against the first week's pay, it erred by failing to apply the "primarily for the benefit of the employer" test to the pre-employment expenses incurred by the workers. ER 32-33. Instead, it limited the definition of a kick-back solely to the *examples* of facilities that are "primarily for the benefit or convenience of the employer" listed in the relevant regulations, and

wholly confused the relationship between the obligations imposed by the FLSA and the regulations governing the H-2A program. *Id.*[13] *See also* 29 C.F.R. §§ 531.32(c) (providing examples of "other facilities" and cross-referencing Section 778.217 regarding "travel expenses") & 778.217 (list of examples of expenses which may not be counted as wages "intended to be illustrative rather than exclusive"). When the "primarily for the benefit of the employer" analysis is properly applied – as evidenced by unequivocal DOL policy and the decisions of every other court that has evaluated this issue – it is clear that inbound travel and immigration expenses primarily benefit H-2A employers. As a result, Peri was obligated to reimburse the Farmworkers for these expenditures during their first week of work.

---

[13] DOL has rejected this approach. *See* DOL Field Assistance Bulletin 2009-2 at 11 n.5 (stating the correct approach is to apply Section 203(m) primary benefit analysis and "that 531.35 does not specifically address transportation, visa and recruitment fees for temporary foreign workers is irrelevant to the analysis. The regulation sets forth the general prohibition against kick-backs and has one example relating to tools of the trade; that does not indicate that kick-backs for other employer expenses are permissible.").

### 1.   Travel And Immigration Expenses Are For Peri's Benefit.

An employer's business decision to import a foreign labor force predictably and unavoidably includes substantial travel and immigration costs. Indeed, without the transportation and visas that are "an incident of and necessary to" the employment of guest workers, Peri would be left with empty fields, regardless of how many workers DOL approved it to hire. Moreover, the regulations governing the H-2A program require Peri to absorb these costs.[14] These expenses, intrinsically linked to Peri's business decision to participate in the H-2A visa program, are primarily for Peri's benefit and convenience. *See* 29 C.F.R. § 531.32(c) (expenses for "transportation incident of and necessary to the employment" are primarily for the employer's benefit);

---

[14]   H-2A employers must pay the full cost of inbound transportation and immigration expenses, making them a mandatory business expense, even in circumstances where the expenses do not reduce workers' wages below the statutory minimum.  *See* 20 C.F.R. §§ 655.122(h)(1) (employer must reimburse transportation costs after 50% of the contract period) & 655.135 (employers may not shift to employees the cost of recruitment or any activity related to labor certification); DOL, Wage-Hour Field Assistance Bulletin No. 2011-2, "H-2A 'Prohibited Fees' and Employer's Obligation to Prohibit Fees," at 3 (May 6, 2011) (visa application, border crossing, and visa fees are included within 20 C.F.R. § 655.135's prohibition).

*Salazar-Martinez,* 781 F. Supp. 2d at 195 ("Expenses that are created by the employer because of the nature of the employer's business, or expenses which the employer brings upon himself by the way he chooses to conduct his business, are primarily for the benefit of the employer."). *See also* ER 11 ¶21.[15]

In contrast, these one-time expenses, incurred by the Farmworkers for the sole purpose of taking temporary jobs in a foreign country, are far removed from expenses they would incur in the normal course of daily life or even in the course of regular employment. *See Arriaga*, 305 F.3d at 1242-43. Guest workers travel hundreds and even thousands of miles and then face strict restrictions imposed by their H-2A visas. They may work only for the petitioning employer, even if they find the job unsatisfactory. *See* 8 C.F.R. § 214.2(h)(5)(viii) (stating that an H-2A worker must depart the United States upon termination of employment). *See also id.* § 214.2(h)(5)(vi) (stating that an H-2A employer must notify U.S. Citizenship and Immigration Service if

---

[15] Expenses imposed on an employer by law are for the employer's primary benefit since an employer may not operate its business in violation of the law. *See Ramos-Barrientos*, 661 F.3d at 595. *See also* 29 C.F.R. § 531.32(c) (medical services which employer is bound to furnish under federal, state, or local law are primarily for the benefit of the employer).

employment terminates early or worker fails to report to work). In addition, the guest worker's H-2A employment contract controls the length of time that he or she is permitted to remain in the United States; if an employer ends a job for any reason, the guest worker must return home. 8 C.F.R. § 214.2(h)(5)(viii) (stating that, with only limited exceptions, "an alien's stay as an H–2A nonimmigrant is limited by the term of an approved petition"). Unlike a United States citizen employee who travels to a new job, even for a temporary position, H-2A employment affords a worker neither the possibility of future permanent employment nor the option to relocate to the new area.

Moreover, workers are required to maintain their foreign residences during their temporary employment. *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a) ("having a residence in a foreign country which [the worker] has no intention of abandoning" is necessary to obtain H-2A visa). *See also Ramos Barrientos*, 661 F.3d at 597-98 (holding that the cost of H-2A housing "near a job site far from their permanent residence" was primarily for the benefit of the employer because it "did not arise in the course of ordinary life," and instead was required by federal law as a condition of participation in the H–2A program thus

"arose from the employment itself" (internal quotation marks omitted)).[16]

Put simply, the FLSA requires Peri to reimburse the Farmworkers for the transportation and immigration expenses that they incurred for Peri's benefit. The Farmworkers alleged in their Second Amended Complaint that Peri never reimbursed them for these expenses and that the failure to reimburse those expenses dropped their wage below the federal minimum for their first week of work. Accordingly, the district court should not have dismissed these claims and its decision must be reversed.

### 2. The Fifth Circuit's Approach Is Inconsistent With The Controlling DOL Interpretations.

In its ruling, the district court mistakenly relied on *Castellanos-Contreras v. Decatur* Hotels*, L.L.C.,* 622 F.3d 393 (5th Cir. 2010), a case

---

[16] While the Court of Appeals for the Ninth Circuit has not addressed this issue, the few cases that analyze the applicable regulations support this result. *See Gordon v. City of Oakland,* 627 F.3d 1092, 1095 (9th Cir. 2010) (stating that "kick-backs" that reduce an employee's wages below the minimum are impermissible, but holding that the cost of police academy certification which could be used to obtain other positions and was therefore not an improper kick-back); *Bobadilla-German,* 641 F.3d at 396 (stating that resolving the issue of whether employers could credit migrant workers' housing costs against minimum wage under the FLSA would require "primarily for the benefit or convenience of the employer" analysis under Section 203(m)).

involving H-2B workers and not H-2A workers, to conclude that Peri was not required to reimburse work, travel, immigration, and recruitment expenses during the first week of work. In *Castellanos-Contreras*, the court declined to follow the reasoning set forth in *Arriaga,* finding it inapplicable since the regulatory regime governing the H-2A program provides H-2A workers with protections not extended to H-2B workers. *See Castellanos-Contreras,* 622 F.3d at 393.

The district court patently erred in relying on *Castellanos-Contreras* for at least two reasons. First, the decision is inapposite because it *involves H-2B workers, not H-2A workers,* and the H-2B program involves an entirely different regulatory scheme for guest workers. Second, *Castellanos-Contreras* unduly limits the definition of "kick-backs," for purposes of 29 C.F.R. § 531.35, to "tools of the trade," when in fact the regulation mentions tools of the trade as a single, non-exhaustive example of possible kick-backs. *See Castellanos-Contreras,* 622 F.3d at 401 ("[a] visa and physical presence at the job site are not 'tools' particular to this 'trade'").

In short, the Fifth Circuit got it wrong — as recognized by a well-reasoned and "emphatic" dissenting opinion, the DOL's interpretation,

and the numerous courts which have declined to follow the Fifth Circuit's reasoning. *See id.* at 404-422 (dissenting opinion arguing that the majority created its own "eccentric" interpretation of the FLSA by failing to accord deference to DOL interpretations and that H-2B expenses were primarily for the benefit of employer); Field Assistance Bulletin 2009-2 at 11 n.5 (rejecting the *Castellanos-Contraras* approach); *Teoba*, 769 F. Supp. 2d at 184-86 (disagreeing with majority's reasoning in *Castellanos-Contraras* and adopting the analysis set forth by the dissent and *Arriaga*); *Salazar-Martinez,* 781 F. Supp. 2d at 186 (same); *Gaxiola,* 776 F. Supp. 2d at 125 (holding that H-2B travel and immigration expenses must be reimbursed during the first week of work); *Perez-Benites*, 2011 WL 1978414 at *13 (applying primary benefit of the employer test and stating *Arriaga* was well-reasoned).

### 3. The District Court Erred By Failing To Construe The FLSA And The H-2A Regulations As "Mutually Supplementary."

As discussed above, the district court first erred by not analyzing Peri's obligation to reimburse travel, immigration, and recruiting expenses through a "primarily for the benefit of the employer" analysis.

It then compounded its error in concluding that the requirements set out in the H-2A regulations trump or preempt FLSA's requirement that workers be paid the minimum wage for every week of work. *See* ER 32-33.

Where, as here, two statutes impose independent, overlapping obligations, an employer must comply with both requirements. *See Powell v. U.S. Cartridge Co.,* 339 U.S. 497, 519 (1950) (stating that FLSA and other employment statutes must be applied together when not mutually exclusive). The district court, however, ignored this legal principle and used the existence of additional worker protections included in the H-2A regulations *to limit* the reach of the FLSA. Contrary to the district court's mistaken conclusion, the FLSA and the H-2A regulations are mutually supplementary and require employers to determine their wage payment obligations under each and comply with both requirements. *See id.* at 519; 20 C.F.R. § 655.122(h)(1) ("the FLSA applies independently of the H-2A requirements and imposes obligations on employers regarding payment of wages" relating to transportation); 20 C.F.R. § 655.135(e) ("The FLSA operates

independently of the H-2A program and has specific requirements that address payment of wages, including deductions from wages").

Thus, the FLSA required Peri to reimburse the Farmworkers' inbound travel, immigration, and recruitment expenses during their first workweek *to the extent they reduced the workers' wages below the minimum wage*. The H-2A regulations then required *full* reimbursement of travel, immigration, and recruitment expenses once the worker completed 50% of the contract period. 20 C.F.R. § 655.122(h)(1). In other words, Peri was required to reimburse its H-2A workers for these expenses up to the minimum wage during the first work week and provide full reimbursement, in accordance with the H-2A regulations, at the midway point of the contract period. *See Arriaga*, 305 F.3d at 1235 (where the FLSA requires employers to reimburse certain expenses at an earlier time than the H-2A regulations, requiring employers to do both would satisfy both statutes).

### 4.    Peri's Recruitment Fees Were Primarily For Its Benefit And Also Must Be Reimbursed.

In its ruling on Peri's Motion to Dismiss, the district court omitted any analysis regarding the Farmworkers' allegations that the FLSA requires Peri to reimburse the recruitment fees paid by the

Farmworkers during their first week of work. *See* ER 10 ¶15; 11-12 ¶¶21, 24. Like the workers' travel and immigration expenses, the recruitment fees primarily benefitted Peri because (1) employee recruiting is a core business expense; and (2) the regulations governing the H-2A program require employers to pay all recruitment costs.

Without question, recruiting is a fundamental business expense. It allows an employer to find available prospective employees, evaluate their qualifications, and secure their employment. Further, recruiting is a central, necessary component of an employer's participation in the H-2A program because it must find large numbers of foreign applicants willing to travel to the United States. Conversely, the cost of securing a qualified foreign workforce is simply not an "ordinary living expense" a worker encounters outside the context of his H-2A employment. *Rivera*, 2008 WL 81570 at *14 (holding that recruiting expenses are primarily for the benefit of the employer).

Moreover, the H-2A regulations require employers to pay for all costs related to recruiting H-2A workers. *See* 20 C.F.R. §§ 655.135(j) (employer may not seek or receive payment for recruitment costs), 655.135(k) (employer must contractually forbid recruiters from seeking

payments from prospective employees); 8 C.F.R. § 214.2(h)(5)(xi)(A) (Citizenship and Immigration Service will deny or revoke employer H-2A petitions if the employer or employer's recruiter has collected a fee from a prospective employee as a condition of employment). Because Peri had a legal obligation to pay all of its recruiting expenses, these were mandatory business expenses primarily for Peri's benefit. *See Ramos-Barrientos,* 661 F.3d at 597 (legally required expenses are primarily for the benefit and convenience of the employer).

The Farmworkers alleged that Peri required them to pay hiring and recruitment fees. *See* ER 10-11 ¶¶15, 21. To the extent that these expenses reduced the workers' first week's pay below the minimum wage, the FLSA required Peri to reimburse them. *See Avila-Gonzalez* 2006 WL 643297 at *2 (*quoting Marshall v. Glassboro Service Ass'n, Inc.,* 1979 WL 1989 (D.N.J. Oct. 19, 1979)) (holding H-2A employer was required to reimburse recruitment fees paid by workers because "[c]osts incidental to an employer's recruitment program primarily benefit the employer"). *See also Napoles-Arcila v. Pero Family Farms, LLC*, No. 08-80779-CIV, 2009 WL 1585970 (S.D. Fla., June 4, 2009) (certifying a

class of H-2A workers seeking, *inter alia*, reimbursement for recruitment fees).

In sum, the Farmworkers incurred travel, immigration, and recruitment expenses primarily for Peri's benefit and convenience. Because Peri failed to reimburse the Farmworkers for these expenses during their first week of work, the Farmworkers did not receive their first week of wages "free and clear." Accordingly, the Farmworkers have stated legally valid and cognizable claims under the FLSA by alleging that Peri did not pay them the minimum wage during their first week of work, and the district court erred in dismissing their claims.

## II.   THE FARMWORKERS STATED VALID CLAIMS UNDER NEVADA LAW.

Nevada state law affords employees protections that supplement those provided in the FLSA. Specifically, the Nevada Wage and Hour Laws and the Nevada Constitution set a state minimum wage and establish a private right of action for employees to recover back pay, damages, attorneys' fees and costs, and other remedies. *See* NRS 608.250 & 608.260; Nev. Const. Art. 15, § 16.[17] In addition, the Nevada

---

[17] Nevada's current minimum wage is $8.25 per hour for employees who do not receive health insurance benefits from their

Wage and Hour Laws allow employees to seek penalties from employers who fail to pay them the wages due at the end of their work term. *See* NRS 608.040, 608.050, & 608.140 (providing employees with the right to seek wages earned and due according to the terms employment, as well as a penalty of up to one-month worth of wages and attorneys' fees).

The Farmworkers alleged that Peri violated the minimum wage provisions of the Nevada Wage and Hour Laws and the Nevada Constitution by failing to reimburse them for travel, immigration, and recruitment expenses during their first week of employment. ER 19 ¶¶50-52; 21 ¶¶55-58. Though these claims present an issue of first impression, Nevada's minimum wage law should be interpreted in accordance with the FLSA. *See* NRS 608.250 (requiring the Nevada Labor Commissioner to establish a state minimum wage "in accordance with federal law"); NRS 608.100 (providing that it is unlawful for an employer to "[p]ay a lower wage, salary or compensation to an employee

---

employer. *See* Nev. Const. Art. 15, § 16(A); Nev. Admin Code § 608.100; Office of the Labor Commissioner, *State of Nevada 2011 Annual Minimum Wage Bulletin*, *available at* http://www.laborcommissioner. com/min_wage_overtime/3-28-11%20Minimum%20Wage%20Bulletin .doc (April 1, 2011).

than the amount that the employer is required to pay to the employee by virtue of any statute or regulation"); *Prieur v. D.C.I. Plasma Ctr. Of Nev., Inc.* 726 P.2d 1372, 1373 (Nev. 1986) (relying on case law interpreting the FLSA to hold that a prison is not an employer for purposes of NRS 608.250). *See also* ER 35 ("The federal and state minimum wage laws exist for the same purpose: to ensure a minimum compensation for each hour worked.").

The district court dismissed the Farmworkers' state minimum wage claims, holding that its decision that the Farmworkers did not state claims under the FLSA dictated such a result. ER 36 ("the Court will dismiss…[the Farmworkers' state wage claims] for the same reason it dismisses the federal wage claims"). Indeed, the district court even stated that if federal law required Peri to reimburse the Farmworkers for their H-2A expenses, the practice would be similarly unlawful under state law. ER 35-36 ("The Nevada Supreme Court does not appear to have considered the kick-back theory, but the Court believes that it would adopt it…When an employee is required to provide a benefit to an employer as a condition of employment, the hourly compensation is effectively reduced."). Because the district court erred in holding that

47

the Farmworkers did not state valid claims under the FLSA, *see* Sec. I, *supra,* it further erred by dismissing the Farmworkers' minimum wage claims under NRS 608.250 and 608.260 and the Nevada Constitution.

Similarly, the district court erred in dismissing the Farmworkers' claims under NRS 608.040 and 608.050. The Farmworkers adequately alleged that Peri failed to pay them both minimum wages and wages due to them under their contracts. ER 11-12 ¶¶22-25. Thus, the Farmworkers have adequately stated a claim under NRS 608.040 and 608.050. *See* NRS 608.040 & 608.050 (providing that an employer must pay a statutory penalty when it does not pay wages or compensation at the time it is due). *See also* NRS 608.100(b) (providing that it is unlawful for an employer to "[p]ay a lower wage, salary or compensation to an employee than the amount that the employer is required to pay to the employee by virtue of any statute or regulation or by contract between the employer and the employee").

## III. THE DISTRICT COURT ERRED IN DISMISSING THE FARMWORKERS' BREACH OF CONTRACT CLAIMS.

The district court also erred by dismissing Count II (Breach of Contract) of the Farmworkers' Second Amended Complaint because the Farmworkers' allegations more than satisfied the federal pleading

standard.[18] Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to include a plausible "short, plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Under Rule 8(a)'s liberal notice pleading requirements, a plaintiff is not required to plead each element of a *prima facie* case, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), and "need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. ---, 131 S. Ct. 1289, 1296 (2011). As long as the plaintiff provides "fair notice of the basis" of his or her claims, then Rule 8(a)'s requirements are satisfied. *Swierkiewicz*, 534 U.S. at 514; *Erickson v. Pardus,* 551 U.S. 89, 93 (2007).

The district court simply got it wrong in dismissing the Farmworkers' claim for breach of contract on the basis that their

---

[18] The district court's ruling dismissing the breach of contract claim is perplexing because Peri never argued that Count II of the Second Amended Complaint did not include enough factual specificity. To the contrary, Peri's opposition to the Farmworkers' motion for leave to file a second amended complaint made clear that Peri perfectly understood the nature of the Farmworkers' allegations: "Apparently, Plaintiffs do not contend that Peri & Sons only breached their contracts by not reimbursing them for their pre-employment and post-employment travels. Rather, they now allege that Peri & Sons failed to pay them their appropriate wages for seemingly every day of their employment." R.43 at 11.

Second Amended Complaint did not "plead specific breaches" of the clearance orders. ER 34. The Farmworkers not only provided Peri ample notice of their claim by alleging each element required to establish a breach of contract, but they also specifically set forth the nature of each breach.

In Nevada, to prove a breach of contract claim, a plaintiff need only show "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008). *See also Medical Providers Fin. Corp. II v. New Life Centers*, LLC, No. 2:07-CV-1618-KJD-PAL, --- F. Supp. 2d ---, 2011 WL 835485 (D. Nev. March 4, 2011); *Richardson v. Jones*, 1 Nev. 405 (1865). Here, the Second Amended Complaint alleged that the Farmworkers contracted with and worked for Peri pursuant to regulations promulgated by the DOL through the H-2A agricultural guest worker program. ER 7 ¶7. They further alleged that the terms of their employment contracts with Peri were described in clearance orders that Peri submitted to the DOL. ER

8-9 ¶¶10-13.[19] Next, the Farmworkers alleged that under the terms of those clearance orders, Peri agreed to: (1) pay the Farmworker at least the adverse effect wage rate for all hours worked, (2) comply with all federal and state employment-related laws and regulations, (3) provide to the worker, without charge, all tools, supplies, and equipment required to perform the duties assigned, (4) provide or pay for transportation from the workers' home to the employer's workplace, and (5) provide for or pay for the expenses that the Farmworkers incurred during their return trips to Mexico. 20 C.F.R. §§ 655.122(f), (h) & (l); 20 C.F.R. § 655.135(e); ER 8-9 ¶¶10-13. Finally, the Farmworkers alleged that Peri breached each of these provisions and that these breaches caused the Farmworkers to suffer monetary damages. ER 11-12 ¶¶21-26; 15 ¶39; 18 ¶49.

Courts in a variety of jurisdictions have held that breach of contract allegations far less detailed than the ones in the Farmworkers' Second Amended Complaint are sufficient to satisfy Rule 8(a)'s pleading standard. *See, e.g., Dobyns v. United States*, 91 Fed. Cl. 412, 430 (2010) (holding that a plaintiff stated a claim for breach of contract by alleging

_____

[19] Under federal law, the clearance orders constituted employment contracts between Plaintiffs and Peri. 20 C.F.R. § 655.122(q); ER 9 ¶14.

the existence of an agreement, the breach of specific provisions of the agreement, and damages); *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437-38 (6th Cir. 1988) (holding that plaintiff stated a claim for breach of an employment contract by alleging the existence of a contract that was created through the course of dealings between the parties, that the defendant's employment policies were a part of that contract, and that the defendant breached the agreement by terminating her in violation of that contract); *Hardin v. Wal-Mart Stores, Inc.*, No. CIV-F-08-0617 AWI GSA, --- F. Supp. 2d ---, 2011 WL 1566023, at *5 (E.D. Cal. Apr. 25, 2011) (holding that plaintiff stated a claim for breach of an employment contract by alleging that "Wal-Mart and [plaintiff] entered into a verbal contract whereby they agreed to provide him certain hours, schedule[,] and benefits, and in return he agreed to provide his employment services"); *Scott v. Infostaf Consulting, Inc.*, No. 2:09-CV-1175, 2009 WL 3734137, at *4 (W.D. Pa. Nov. 6, 2009) (holding that plaintiff stated a claim for breach of an employment contract where he alleged "the three required elements to state a claim for breach of contract").

In short, the Farmworkers more than satisfied Rule 8(a)'s pleading requirement by (1) alleging the existence of an employment contract with Peri, (2) specifically describing how Peri breached that employment contract in five different ways, and (3) alleging that the Farmworkers suffered damages as a result of those breaches. *See Dobyns*, 91 Fed. Cl. at 430; *Scheid,* 859 F.2d at 437-38. Accordingly, this Court should reverse the district court's ruling dismissing Count II of the Farmworkers' Second Amended Complaint.

## IV. THE DISTRICT COURT ERRED IN APPLYING A TWO-YEAR STATUTE OF LIMITATIONS TO ALL OF THE FARMWORKERS' CLAIMS WHEN PERI HAS THE BURDEN OF PROVING ITS AFFIRMATIVE DEFENSE AS TO THE FLSA CLAIMS AND WHEN SOME OF THE STATE LAW CLAIMS ARE SUBJECT TO A FOUR OR SIX-YEAR STATUTE OF LIMITATIONS.

The district court also erred by applying a two-year statute of limitations to *all* of the Farmworkers' "federal and state wage claims." ER 29. Contrary to the court's ruling, the FLSA imposes a three-year statute of limitations on the workers' claims that Peri willfully violated the statute, and Nevada law imposes a six-year statute of limitations on the Farmworkers' breach of contract claims and a four-year statute of

limitations on the Farmworkers' minimum wage claims under Section 16 of Article 15 of the Nevada Constitution.

### A. A Three-Year Statute of Limitations Applies to the Farmworkers' FLSA Claims As Alleged in the Second Amended Complaint.

The Farmworkers' Second Amended Complaint alleged that Peri's violations of the FLSA were "deliberate, intentional, and willful." ER 17 ¶44. It is well-settled that a plaintiff may invoke the FLSA's extended statute of limitations when an employer shows reckless disregard for whether its employment practices violate the statute. 29 U.S.C. § 255(a) (providing a three-year statute of limitations period for willful violations); *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988) (holding that willfulness occurs when an employer knowingly or recklessly disregards the FLSA). *See also Alvarez v. IBP, Inc.,* 339 F.3d 894, 908 (9th Cir. 2003) (holding that reckless disregard can occur "where an employer disregarded the very 'possibility' that it was violating the statute"); 29 C.F.R. § 578.3(c)(3) (providing that reckless disregard of the FLSA occurs where "the employer should have inquired further into whether its conduct was in compliance with the Act" and failed to do so).

Thus, where, as here, a plaintiff properly pleads that an employer acted willfully, the district court must apply a three-year statute of limitations and cannot dismiss claims as untimely unless it is apparent from the face of the complaint that the alleged unlawful acts are clearly outside of the three-year time limit. *See Dent v. Cox Communications Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007) ("[Plaintiff's] complaint alleges willful violations of the FLSA, so we must assume that a three-year statute of limitations…applies"); *United States v. McGee,* 993 F.2d 184, 187 (9th Cir. 1993) (stating that plaintiffs are not required to plead around the statute of limitations affirmative defense).

Statute of limitations defenses, in particular, are not well-suited for resolution on a motion to dismiss because the Federal Rules of Civil Procedure do not require a plaintiff to plead around a defendant's potential affirmative defenses. *See McGee,* 993 F.2d at 187 (stating that plaintiffs need not plead around a statute of limitations defense); *Tregenza v. Great Am. Communications Co.,* 12 F.3d 717, 718 (7th Cir. 1993) ("The statute of limitations is an affirmative defense and a plaintiff is not required to negate an affirmative defense in his complaint."); *Morris v. Fresno Police Dept.,* No. 08-CV-01422-OWW-

GSA, 2010 WL 289293, at *10 (E.D. Cal. Jan. 15, 2010) ("The statute of limitations provides an affirmative defense, and a plaintiff is not required to plead on the subject of an affirmative defense or allege facts which assist the defendant in making an affirmative defense."). Indeed, once the plaintiff states a valid claim for relief, it is the defendant's burden to plead and prove that the plaintiff's claim is untimely. *Id.*

As mentioned above, the Second Amended Complaint alleged that Peri acted willfully. *See* ER 17 ¶¶44. It also alleged that Peri was aware of the FLSA and certified to the DOL that it would comply with the statute as it applied to H-2A workers. ER 8-9 ¶¶10-13. Under the Federal Rules of Civil Procedure, the Farmworkers were not required to allege anything more to establish that the three-year statute of limitations applies at this stage of the litigation. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

## B.    The Farmworkers' State Law Claims Are Not Limited To A Two-Year Limitations Period.

Not only did the district court erroneously apply a two-year statute of limitations to all of the Farmworkers' FLSA claims, but it also did so with respect to the Farmworkers' "state wage claims" by

dismissing all claims "accruing before February 16, 2009, without leave to amend." ER 29. This was clear error as Nevada law prescribes more expansive limitations periods for the Farmworkers' breach of contract claims and claims under Article 15, Section 16 of the Nevada Constitution ("Section 16").

NRS 11.190(1)(b) provides that a six-year statute of limitations governs "an action upon a contract, obligation or liability founded upon an instrument in writing." It is undisputed that the Farmworkers base their breach of contract claims on valid, written employment contracts with Peri. ER 9 ¶¶12-14. Accordingly, a six year statute of limitations must apply, and the district court should not have limited the Farmworkers' breach of contract claims to two years. *See Soper By and Through Soper v. Means*, 903 P.2d 222, 224 (Nev. 1995) (stating that a six-year limitations period governs breach of contract actions founded upon an instrument in writing).

In addition, the Farmworkers' minimum wage claims under Section 16 are governed by a four-year statute of limitations. In 2004, the people of Nevada voted to amend the Nevada Constitution to enhance state minimum wage protections; voters approved and ratified

the amendment again in 2006. *See* Nev. Const. Art. 15, § 16. As a result, Section 16 establishes a private right of action, separate and independent from the right of action created by NRS 608.260 in the Nevada Wage and Hour Laws. *See* Nev. Const. Art. 15, § 16(B) (creating private right of action without referencing NRS 608.250 or 608.260).[20]

Section 16 does not specify a statute of limitations for claims brought to enforce its provisions. *Id.* However, because it does create a legal obligation for employers that may be enforced by employees, Section 16 claims invoke the four-year statute of limitations period specified in NRS 11.190(2)(c) for actions upon an "obligation or liability not founded upon an instrument in writing." Alternatively, the statute of limitations for claims brought under Section 16 is governed by the catch-all provision, NRS 11.220, which provides a four-year limitations period for "an action for relief, not hereinbefore provided for." In either

---

[20] NRS 608.260 creates a private right of action to recover minimum wages "prescribed by regulation of the Labor Commissioner pursuant to the provisions of NRS 608.250" and applies a two-year statute of limitations to such claims. The Farmworkers' claims under Section 16 do not seek minimum wages established pursuant to NRS 608.250; rather, those claims seek minimum wages established pursuant to Section 16. *See* ER 21 ¶¶55-58 (Count IV for violations of the Nevada Constitution), 19-20 ¶¶50-54 (Count III for violations of the Nevada Wage and Hour Laws, including NRS 608.250 & 608.260).

case, the statute of limitations for the Farmworkers' constitutional claims is four years, and the district court erred by applying a two-year limitations period and dismissing all claims accruing prior to February 16, 2009.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's Order.

Dated: January 12, 2012                    Respectfully Submitted,

                                           /s/ Matthew J. Piers

                                           Matthew J. Piers
                                           José Jorge Behar
                                           HUGHES SOCOL PIERS
                                           RESNICK & DYM, LTD.
                                           70 W. Madison Street, Suite
                                           4000
                                           Chicago, IL 60602
                                           Tel: (312) 580-0100
                                           Fax: (312) 580-1994


                                           Mark R. Thierman
                                           THIERMAN LAW FIRM, P.C.
                                           7287 Lakeside Drive
                                           Reno, Nevada 89511
                                           Tel: (775) 284-1500
                                           Fax: (775) 703-5027


                                           *Counsel For Plaintiffs-Appellants*

## STATEMENT OF RELATED CASES

Appellants are unaware of any pending related cases before this Court as defined in Ninth Circuit Rule 28-2.6.


Dated:  January 12, 2012                    Respectfully Submitted,

                                                                 /s/ Matthew J. Piers

                                                                 Matthew J. Piers
                                                                 José Jorge Behar
                                                                 HUGHES SOCOL PIERS
                                                                 RESNICK & DYM, LTD.
                                                                 70 W. Madison Street, Suite 4000
                                                                 Chicago, IL 60602
                                                                 Tel: (312) 580-0100
                                                                 Fax: (312) 580-1994


                                                                 Mark R. Thierman
                                                                 THIERMAN LAW FIRM, P.C.
                                                                 7287 Lakeside Drive
                                                                 Reno, Nevada 89511
                                                                 Tel: (775) 284-1500
                                                                 Fax: (775) 703-5027


                                                                 *Counsel For Plaintiffs-Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

The Appellants believe that oral argument would assist the Court in its review of this matter. This case presents a question of first impression in the Ninth Circuit concerning the obligations imposed by the Fair Labor Standards Act on employers of foreign guest workers. This case's resolution is likely to impact employers and low-wage workers throughout the country.

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,925 words according to the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, using Microsoft 2010, 14-point Century Schoolbook.


Dated:  January 12, 2012          /s/ Matthew J. Piers_____
                                  Matthew J. Piers

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 12, 2012.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  January 12, 2012          /s/ Matthew J. Piers_____
                                  Matthew J. Piers