No. 11-17365

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

―――――――

## VICTOR RIVERA RIVERA, *et al.*,
*Plaintiffs - Appellants,*

v.

## PERI & SONS FARMS, INC.,
*Defendant - Appellee.*

―――――――

ON APPEAL FROM UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA
CIVIL CASE NO. 3:11-cv-00118 (Honorable Robert C. Jones)

―――――――――――――――――――――――――

## APPELLANTS' REPLY BRIEF

―――――――――――――――――――――――――

Mark R. Thierman
**THIERMAN LAW FIRM, PC**
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Fax: (775) 703-5027

Matthew J. Piers
José Jorge Behar
**HUGHES SOCOL PIERS
RESNICK & DYM, LTD.**
70 W. Madison Street, Suite 4000
Chicago, IL 60602
Tel: (312) 580-0100
Fax: (312) 580-1994

*Counsel for Appellants*

## <u>TABLE OF CONTENTS</u>

I.   Introduction ...........................................................................1

II.  The DOL's longstanding interpretation of its regulations is entitled to deference because it is not plainly erroneous or inconsistent with the applicable regulations ...............................4

   A.   The DOL's H-2A regulations do not conflict with the DOL's interpretation of its FLSA regulations ...............................8

   B.   FLSA requires an employer to reimburse pre-employment expenses that an employee incurs for the benefit of his employer on the employee's first payday, not months afterward .......................................................11

   C.   *Decatur Hotels* does not control the outcome of this case and was wrongly decided .......................................13

   D.   Peri's "public policy" argument – that H-2A workers will abandon their employment and remain illegally in the United States if H-2A employers are required to partially reimburse travel and immigration expenses on the first payday – is outrageous and baseless ...............16

   E.   The FLSA regulations are consistent with the DOL's position that H-2A employers are required to partially reimburse travel and immigration expenses on the H-2A workers' first payday ...............................................18

   F.   Peri must partially reimburse the Farmworkers' travel and immigration on the first payday ...............................20

   G.   The NCAE's argument concerning travel expenses of United States seasonal workers is an irrelevant diversion from the facts of this case ...............................22

i

III.   The Farmworkers adequately pleaded their breach of contract claim .................................................................... 25

IV.   The Farmworkers adequately pleaded and did not waive their FLSA claim for reimbursement of recruitment fees ............... 30

V.    The District Court prematurely and erroneously ruled on Peri's statute of limitations affirmative defense ...................... 33

CONCLUSION ......................................................................... 35

# TABLE OF AUTHORITIES

## Cases

*Ariaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1237 n.11 (11th Cir. 2002) .......................................................................................11, 20

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1990 (2009) ...........................29

*Auer v. Robbins*, 519 U.S. 452, 461, 462 (1997) ....................passim

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ...........28

*Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993) .....................21

*BLT Restaurant Group LLC v. Tourondel*, No. 10 CV 6488(GBD), 2011 WL 3251536, *5 (S.D.N.Y. July 19, 2011) ..........................30

*Castellanos-Contreras v. Decatur Hotels, L.L.C.*, 622 F.3d 393 (5th Cir. 2010) ....................................................................13, 14

*Chase Bank U.S.A., N.A. v. McCoy*, 131 S. Ct. 871, 881 (2011) ...7, 19, 25

*Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) .......................................................................................29

*In re Rains*, 428 F.3d 893, 902 (9th Cir. 2005) ...........................28

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) .....4, 5

*Marshall v. Root's Restaurant, Inc.*, 667 F.2d 559, 560 (6th Cir. 1982) .......................................................................................12

*Swan v. Peterson,* 6 F.3d 1373, 1383 (9th Cir. 1993) ..................21

*United States v. Juvenile Male*, No. 09-30330, ---F.3d---, 2012 WL 206263, *7 (9th Cir. Jan. 25, 2012) ..........................................11

*United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993) ..........33

*Vernon v. Heckler*, 811 F.2d 1274, 1278 (9th Cir. 1988) ........................33

*Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ........................................................................................21

## Regulations

20 C.F.R. § 655, Subpart B..................................................................26
20 C.F.R. § 655.122(c)........................................................................27
20 C.F.R. § 655.122(h) .......................................................................27
20 C.F.R. § 655.122(h)(1)..................................................... 8, 9, 14, 21
20 C.F.R. § 655.122(h)(2)............................................................ 26, 27
20 C.F.R. § 655.122(m) ......................................................................21
20 C.F.R. § 655.135(e) ..................................................................8, 9, 21
29 C.F.R. § 531.32(a) ...........................................................................7
29 C.F.R. § 778.217 .................................................................... passim
29 C.F.R. § 778.217(b)(5) ....................................................................19
29 C.F.R. § 531.32(c) .........................................................................6, 7
29 U.S.C. § 203(m)........................................................................14
29 C.F.R. § 531.32 ...................................................................... passim
29 C.F.R. § 531.35 ...................................................................... passim
29 C.F.R. § 531.36 ...............................................................................20
8 C.F.R. § 214.2(h)(2)(i)(D) ...............................................................24
Table–2012 Adverse Effect Wage Rates, 76 Fed. Reg. 79711 (Dec. 22, 2011)..........................................................................................9
U.S. Dep't of Labor, Wage & Hour Div. Field Operations Handbook § 30b04 (Dec. 9, 1988) ..........................................................21

## Statutes

29 U.S.C. § 203(m) ..............................................................................14

## I.    Introduction

In their opening brief, Plaintiffs-Appellants ("the Farmworkers") established that the FLSA required Defendant-Appellee Peri & Sons Farms, Inc. ("Peri") to reimburse the Farmworkers, on their first payday, for a portion of the travel and immigration expenses, including recruitment expenses, that the Farmworkers incurred in advance of working for Peri.[1] The Farmworkers pointed to longstanding United States Department of Labor ("DOL") interpretations and at least a dozen rulings from district and circuit courts in support of their argument that they incurred the travel and immigration expenses primarily for Peri's benefit. Additionally, the Farmworkers demonstrated that they properly pleaded a breach of contract claim and that the district court prematurely and wrongly ruled on Peri's statute of limitations affirmative defense. The DOL filed an amicus brief supporting the Farmworkers' interpretation of the FLSA.

---

[1] The Farmworkers voluntarily dismiss their claim that the money they spent on passports was an expense primarily for the benefit of Peri, acknowledging that this Court should defer to the DOL's position on the issue. 20 C.F.R. § 655.135(j). Nevertheless, the Farmworkers continue to maintain that other immigration expenses that they incurred, including money spent on recruiting fees, visas, and I-94 forms, were primarily for the benefit of their employer.

In response, Peri argues that this Court should reject DOL's long-standing and well-reasoned interpretation of its own FLSA regulations for four reasons: (1) because it would render superfluous the H-2A regulation requiring full reimbursement of travel and immigration expenses at the midpoint of the worker's contract, (2) because employers receive no benefit from H-2A workers' travel and immigration expenses until the midpoint of the workers' contract, (3) because the Fifth Circuit held, in the H-2B context, that the FLSA does not require an employer to partially reimburse travel and immigration expenses on the first payday, and (4) because H-2A workers will likely abandon their jobs and remain illegally in the United States if H-2A employers partially reimburse H-2A workers' travel and immigration expenses on their first payday. Peri also argues that the Farmworkers failed to state a breach of contract claim, that the Farmworkers waived their argument concerning non-reimbursement of recruitment fees, and that the district court correctly dismissed the Farmworkers' wage and hour claims that accrued more than two years before they filed suit.

After Peri filed its brief, The National Council of Agricultural Employers ("NCAE") filed an amicus brief in support of Peri. NCAE

argues that: (1) the regulations requiring full reimbursement of travel and immigration expenses at the midpoint of the work contract conflict with the FLSA regulations, in particular 29 C.F.R. § 778.217; (2) an employer does not violate the FLSA's "prompt payment" requirement by waiting two or three months to reimburse pre-employment travel and immigration expenses; and (3) the DOL's interpretation of the FLSA, if accepted, would require an employer to reimburse the travel expenses of a United States citizen who relocated from another part of the country to accept seasonal employment.

Neither Peri's nor NCAE's arguments have any merit, and – with regard to the Farmworkers' FLSA claim – neither Peri nor NCAE has demonstrated that the DOL's interpretation of its own regulations is "plainly erroneous or inconsistent with the regulations" or that there is "reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *See Auer v. Robbins*, 519 U.S. 452, 461, 462 (1997). Consequently, this Court should reverse the district court's ruling.

II.   **The DOL's longstanding interpretation of its regulations is entitled to deference because it is not plainly erroneous or inconsistent with the applicable regulations.**

Peri and NCAE are wrong about the kind of deference that this Court should afford the DOL's interpretation of its own regulations. Peri and NCAE argue that the 2009-2 Bulletin and the preamble to the February 12, 2010 Final Rule are not entitled to deference because they conflict with the preamble to the 2008 Final Rule that was in place for three months and that was issued without notice and comment and quickly withdrawn. Peri and NCAE maintain that this short-term change in the DOL's position means that the DOL's current interpretation is entitled to no deference. This argument is baseless and should be rejected.

The Supreme Court is clear in holding that an agency's interpretation of its own regulation is entitled to deference even if it represents a change in the agency's position. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007). In *Long Island Care*, the Supreme Court held that the DOL's interpretation of its FLSA regulations was entitled to *Auer* deference even though the agency had

4

not consistently interpreted those regulations the same way over the years. *Id.* Because the DOL reached its interpretation after due consideration – including notice and comment rulemaking – the Court deferred to the agency's position. *Id.* The Court said, "[A]s long as interpretive changes create no unfair surprise . . . the change in interpretation alone presents no separate ground for disregarding the Department's present interpretation." *Id.* at 170-71. In this case, as in *Long Island Care*, the DOL's interpretation of the FLSA regulations changed (for a mere three months), but its present interpretation was established after due consideration, including fair notice and comment procedures. Consequently, as noted above, this Court must defer to the agency's interpretation unless it is "plainly erroneous or inconsistent with the regulations" or there is "reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *See Auer*, 519 U.S. at 461, 462. Peri has provided no such reason to second guess the DOL's

interpretation of its own regulations.[2]

As the DOL succinctly explained in its amicus brief, the FLSA and its implementing regulations require an employer to pay the minimum wage each week free and clear, which means that an employer cannot shift its business expenses to its employees if doing so reduces the employee's weekly wage below the required federal minimum. *See* DOL Br. at 5-7. To help employers determine whether business expenses are primarily for the benefit of the employer or for the benefit of the employee, the DOL has promulgated regulations that distinguish between the two categories of expenses. *See* 29 C.F.R. §§ 531.32(c), 531.35 & 778.217. These regulations list the following examples of expenses that are primarily for the benefit of the employee: food, housing, lodging, electricity, water, gas, and "transportation furnished

---

[2] Peri also accuses the DOL of changing its position on the issue of whether passport fees are primarily for the benefit of the employer, but the accusation is unfounded. The DOL has always maintained that passport expenses are primarily for the benefit of the employee, and it did not argue otherwise in its amicus brief. *See* DOL Br. at 26 ("The interpretation that transportation and *visa fees* are an incident of and necessary to the employment of H-2A employees is consistent with the position Wage and Hour has articulated over many years regarding the cost of transporting remotely hired workers to the worksite for temporary employment.") (emphasis added). In any event, the Farmworkers no longer seek to recoup passport expenses under the FLSA, so the issue is moot. *See* n.1 *supra*.

employees between their homes and work where the travel time does not constitute hours worked compensable under the Act and the transportation is not an incident of and necessary to the employment." 29 C.F.R. § 531.32(a). The regulations then list the following as examples of expenses that are primarily for the benefit of the employer: tools, uniforms, safety caps, and "transportation charges where such transportation is an incident of and necessary to the employment." 29 C.F.R. § 531.32(c).

The DOL has, for decades, concluded that certain travel and immigration expenses incurred by H-2A workers fall into the latter category because they are "an incident of and necessary to the employment." DOL Br. at 26-28. Accordingly, the expenses must be reimbursed when the employer pays the employee for his first week of work, at least to the extent that the expenses would otherwise drop an employee's wage below the required federal minimum. *Id.* Because the DOL's interpretation of its regulations is not plainly erroneous or inconsistent with its regulations, the Court must defer to the agency's position. *See Chase Bank U.S.A., N.A. v. McCoy*, 131 S. Ct. 871, 881 (2011); *Auer*, 519 U.S. at 461.

### A.     The DOL's H-2A regulations do not conflict with the DOL's interpretation of its FLSA regulations.

Peri and NCAE argue against the DOL's longstanding view that certain travel and immigration expenses incurred by H-2A workers are primarily for the benefit of the employer, citing an H-2A regulation that requires an employer to *fully* reimburse travel and immigration expenses at the midpoint of the H-2A worker's contract. Peri Br. 13-17; NCAE Br. at 11-13 (citing 20 C.F.R. § 655.122(h)(1)). Peri and NCAE contend, wrongly and illogically, that requiring an H-2A employer to partially reimburse travel and immigration expenses so that the worker receives the minimum wage on the worker's first payday conflicts with the H-2A regulation requiring an employer to fully reimburse inbound travel and immigration expenses at the midpoint of the work contract. In making this argument, Peri and NCAE overlook the fact that the relevant H-2A regulations specifically provide that "the FLSA applies independently of the H–2A requirements and imposes obligations on employers regarding payment of wages." 20 C.F.R. § 655.122(h)(1). *See also* 20 C.F.R. § 655.135(e) ("FLSA operates independently of the H-2A program and has specific requirements that address payment of wages,

including deductions from wages . . . ."). NCAE does not cite these provisions at all.

It is simply not true that requiring an employer to reimburse *some* of an H-2A worker's travel and immigration expenses so that the worker receives the minimum wage on the worker's first payday conflicts in any way with a separate requirement that the expenses be reimbursed *in full* at the halfway point of the H-2A contract period. To the contrary, the FLSA and H-2A regulations can and should be read harmoniously and without rendering any regulation superfluous. *Id.*

A simple example demonstrates the lack of conflict between the H-2A regulations and FLSA's requirement that the minimum wage be paid free and clear without kickbacks. In Nevada, the adverse effect wage rate ("AEWR") is $10.43 per hour, *see* Table–2012 Adverse Effect Wage Rates, 76 Fed. Reg. 79711 (Dec. 22, 2011), and H-2A workers frequently work fifty hours per week.[3] As a result, during the first week of work, an H-2A worker will typically earn, under the H-2A regulations, $521.50 ($10.43 x 50 = $521.50). If the worker spent $300

---

[3] PR 26 ("The normal workday is approximately a ten hour shift, from 7:00 am to 12 noon, and 1:00 PM to 6:00 PM. The worker will be required to work five days per week . . .").

on reimbursable inbound travel and immigration expenses, then under the FLSA, the worker must be paid $662.50, which is the product of the federal hourly minimum wage times all hours worked plus the reimbursable expenses ($7.25 x 50 = $362.50 + $300).

Because an H-2A employer must pay the higher of the two amounts ($662.50), it will effectively reimburse just under half of the worker's transportation expenses on the first payday ($662.50 - $521.50 = $141.00) and must then pay the balance of the transportation expenses at the  midpoint of the contract period ($300 - $141.00 = $159.00).[4]

In sum, requiring an H-2A employer to comply with the DOL's two requirements under the FLSA and the H-2A does not render one of the requirements meaningless. Instead, it requires the employer, under the FLSA, to reimburse some of the travel and immigration expenses (1/2 or 2/3) on the worker's first payday and, under the H-2A regulations, reimburse the balance of the expenses at the fifty-percent point of the contract period. There is no conflict between the two regulations, and

---

[4] *See also* DOL Br. at 22 n. 7 (providing a similar hypothetical).

the canon of construction, "the specific controls the general," does not apply.[5]

### B. FLSA requires an employer to reimburse pre-employment expenses that an employee incurs for the benefit of his employer on the employee's first payday, not months afterward.

Peri next argues – without citing any authority whatsoever – that an H-2A worker's travel and immigration expenses are primarily for the benefit of the employee until the employee reaches the  midpoint of the H-2A contract and that, after that point, the expenses transform into ones primarily for the benefit of the employer. Peri Br. at 15. This argument is frivolous and inconsistent with the DOL regulations and the case law. Pre-employment expenses that are primarily for the benefit of the employer must be reimbursed on the first payday to the extent the expenses would otherwise encroach on the minimum wage regardless of whether the worker quits shortly thereafter. *See* 29 C.F.R. § 531.35; *Ariaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1237 n.11

---

[5] This canon of construction applies only when there is a conflict between two statutes or regulations. *See United States v. Juvenile Male*, No. 09-30330, --- F.3d ---, 2012 WL 206263, *7 (9th Cir. Jan. 25, 2012). For this reason, it makes no difference whether the H-2A regulations or the FLSA regulations were promulgated more recently because there is no conflict between the two. *See* NCAE Br. at 11-13.

(11th Cir. 2002) (stating that an employer violates FLSA by requiring an employee to pay $100 for tools before his first day of work if the cost of the tools reduces the worker's wage below the federal minimum *for the first workweek*) (emphasis added); *Marshall v. Root's Restaurant, Inc.*, 667 F.2d 559, 560 (6th Cir. 1982) (affirming the district court's ruling that an employer violated the FLSA during the first workweek when it required waitresses to pay for their uniforms). *See also* Part II. F. *infra.*

Whenever an employer requires an employee to incur a pre-employment expense (whether it be tools, uniforms, books, or travel expenses) for the employer's benefit, the employer accepts the risk that the employee will quit or be fired shortly after he starts working and that the employer's investment in the worker will not be profitable. The possibility of short-term employment makes no difference for purposes of the FLSA's kickback regulation and "free and clear" requirement. Indeed, an alternative rule would require H-2A workers to provide their employers interest free loans for the first two or three months of their employment, all the while hoping that their employer does not fire them before the employee reaches the midpoint of his contract. The FLSA

does not permit employers to procure such interest-free loans from its workers if the loans result in the employees being paid less than the minimum wage.

### C.  *Decatur Hotels* does not control the outcome of this case and was wrongly decided.

Peri and NCAE both rely heavily on the Fifth Circuit's decision in *Castellanos-Contreras v. Decatur Hotels, L.L.C.*, 622 F.3d 393 (5th Cir. 2010), for their argument that the FLSA does not require H-2A employers to partially reimburse pre-employment travel and immigration expenses on the workers' first payday. As discussed in the Farmworkers' opening brief, however, *Decatur Hotels* is not persuasive because it takes an unduly narrow interpretation of the FLSA's kickback regulation and because it does not defer to the DOL's interpretation of its own regulations.

In *Decatur Hotels*, the Fifth Circuit held that an H-2B employer is not required to reimburse travel and immigration expenses on the employee's first payday, even if those expenses reduce the employee's wage below the federal minimum. 622 F.3d at 403. It relied on three factors for its holding. First, it pointed to the fact that H-2B regulations – *unlike H-2A regulations* – do not require any reimbursement of travel

and immigration expenses. *Id.* at 400. Second, it stated that the DOL did not consistently interpret the FLSA to require reimbursement of travel and immigration expenses until 2009, after the events at issue in *Decatur Hotels* took place. *Id.* at 401. And, finally, it said that travel and immigration expenses could not be considered "tools of the trade" for purposes of the FLSA kickback regulation, 29 C.F.R. § 531.35. *Id.*

Two of the Fifth Circuit's concerns are simply irrelevant to this case. This case involves H-2A workers, and the H-2A regulations *do require* an H-2A employer to reimburse travel and immigration expenses. 20 C.F.R. § 655.122(h)(1). Additionally, the DOL's August 21, 2009 interpretation of the FLSA regulation was issued before many of the claims in this case accrued.[6]

The Fifth Circuit's last concern – that travel and immigration expenses cannot be considered "tools of the trade" – takes an unduly narrow interpretation of the DOL's regulations implementing 29 U.S.C. § 203(m) and mistakenly concludes that an expense must be something

---

[6] As the DOL notes, the Fifth Circuit's concerns about retroactivity were unsubstantiated. *See* DOL Br. at 25 ("[T]he Department's interpretation in the Bulletin did not change the law; rather, Bulletin 2009-2 is the Department's interpretation of the section 3(m) regulations.").

like "tools of the trade" in order to be a kickback. As the DOL points out in its amicus brief, "The section 3(m) regulations . . . set forth general principles and, of course, cannot contain an example addressing every specific fact situation." DOL Br. at 19. The kickback regulation lists "tools of the trade" *as an example* of expenses that could be for the benefit of the employer, cross referencing two other regulations, 29 C.F.R. §§ 531.32 & 778.217, that list many other examples of kickbacks – including transportation expenses – that are for the benefit of the employer. 29 C.F.R. § 531.35.

By completely ignoring the other FLSA regulations that expressly address transportation expenses, the Fifth Circuit's analysis was incomplete and failed to recognize that an H-2A worker's travel and immigration expenses – no less than tools or uniforms – are entirely for the benefit of the employer.

Accordingly, this Court should reject the Fifth Circuit's approach.

**D.** **Peri's "public policy" argument – that H-2A workers will abandon their employment and remain illegally in the United States if H-2A employers are required to partially reimburse travel and immigration expenses on the first payday – is outrageous and baseless.**

Peri next argues that significant numbers of H-2A workers will abandon their jobs and remain illegally in the United States if their H-2A employers partially reimburse their travel and immigration expenses on their first payday. This argument is not supported by any facts, is insulting to H-2A workers, and defies common sense.

The overwhelming majority of H-2A workers participate in the H-2A program because it provides a temporary source of income that is not available in their home countries. They have no desire to abandon permanently their friends and families in their home countries, but they are willing to work in the United States on a short-term basis because the H-2A program proves a good source of income for a limited period of time. To suggest that significant numbers of H-2A workers will illegally overstay their visas if this Court decides that the workers must receive an additional $100 to $200 in their first paycheck is nonsensical and offensive to H-2A workers.

In the unlikely event that an H-2A worker considers using the H-2A program as a means to remain illegally in the United States after his visa expires, the worker's decision will not be swayed by the date on which his H-2A employer reimburses travel and immigration expenses. If the worker decides that he wants to stay and work in the United States illegally, then the additional $100 to $200 that he receives on his first payday will not alter when he decides to abandon his employment. Instead, an H-2A worker intent on overstaying his visa is much more likely to continue working for his H-2A employer until the end of his contract period in order to collect as much money as possible before attempting to find other work without valid immigration papers.

Regardless, the DOL is the administrative agency charged with implementing the H-2A program, and if it had concerns that partially reimbursing H-2A workers for travel and immigration expenses during the initial pay period would result in more immigration violations, then it would make its concerns known. Plainly, it has not done so.

The Court should reject Peri's "public policy" argument.

E.  **The FLSA regulations are consistent with the DOL's position that H-2A employers are required to partially reimburse travel and immigration expenses on the H-2A workers' first payday.**

NCAE argues that the DOL's interpretation of the FLSA regulations is erroneous because 29 C.F.R. § 778.217 establishes that H-2A workers' inbound travel and immigration expenses are not primarily for the benefit of the employer. NCAE Br. 6-8. NCAE also contends that "just because an employer cannot take a credit for an expense does not impose an obligation to pay that expense." *Id.* at 7. Neither of the arguments is persuasive.

First, far from making clear that H-2A workers' inbound travel and immigration expenses are primarily for the benefit of the employee, section 778.217 supports the Farmworker's and DOL's argument that inbound travel and immigration expenses are primarily for the benefit of the employer. That regulation provides that reimbursement for "temporary excess" travel expenses, such as where an employee must "report for work at a place other than his regular workplace," may be excluded from the regular rate because the expenses are incurred

18

primarily for the benefit of the employer.[7] 29 C.F.R. § 778.217(b)(5). An H-2A worker's inbound travel and immigration expenses are analogous to the additional travel expenses incurred by a worker who has to report temporarily to a new work location. The expenses are not a typical cost of reporting to work on a daily basis, and the H-2A employee gets no benefit from the travel and immigration expenses other than the ability to work for a single employer. Simply put, nothing in 29 C.F.R. § 778.217 suggests that the DOL's interpretation of the kickback regulation is plainly erroneous or inconsistent with the regulatory language. *See Chase Bank*, 131 S. Ct. at 881; *Auer*, 519 U.S. at 461.

Second, NCAE again misses the mark in maintaining that the Farmworkers' and DOL's interpretation of the FLSA regulation is wrong, by arguing that "just because an employer cannot take a credit for an expense does not impose an obligation to pay that expense." Certainly there are some pre-employment expenses incurred by an employee that an employer need not reimburse. When it comes to

---

[7] This regulation makes clear that its list of reimbursed expenses that cannot be included in the calculation of the regular rate "is intended to be illustrative rather than exhaustive." 29 C.F.R. § 778.217(b).

expenses that are primarily for the benefit of the employer, however, the rules are different. An employer violates the FLSA when it deducts an expense from the employee's paycheck that is primarily for the benefit of the employer and the deduction reduces the employee's wage below the federal minimum. 29 C.F.R. §§ 531.32, 531.35 & 531.36. Moreover, "[t]his rule cannot be avoided by simply requiring employees to make such purchases on their own, either in advance of or during the employment." *Ariaga*, 305 F.3d at 1236. After all, a deduction is no different than requiring an employee to bear an expense out of his own pocket.

The Court should reject NCAE's arguments.

### F. Peri must partially reimburse the Farmworkers' travel and immigration on the first payday.

NCAE next argues, without citing any authority, that an H-2A employer does not violate FLSA's "prompt payment" requirement if it waits several months (until the midpoint of the H-2A contract period) to reimburse pre-employment expenses that employees incur for the benefit of the employer. NCAE points out that the FLSA does not explicitly state when the minimum wage must be paid, and that it should be acceptable for an H-2A employer to wait until the midway

point of a contract period to fully pay an H-2A employee's wage. This argument was not raised by Peri in the district court or in this Court, so it is waived. *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009) ("An amicus curiae generally cannot raise new arguments on appeal."); *Swan v. Peterson*, 6 F.3d 1373, 1383 (9th Cir. 1993). In addition, the argument is frivolous on the merits.

First, as discussed above, the H-2A regulations make clear that FLSA applies independently of the requirement under the H-2A regulations to reimburse travel and immigration expenses at the midpoint of the contract period. 20 C.F.R. §§ 655.122(h)(1) & 655.135(e). NCAE entirely ignores these regulations. Second, an employer violates the FLSA unless the minimum wage is paid on the first payday after the work is performed. *See Biggs v. Wilson*, 1 F.3d 1537, 1539 (9th Cir. 1993) ("If a payday has passed without payment, the employer cannot have met his obligation to 'pay.'"); U.S. Dep't of Labor, Wage & Hour Div. Field Operations Handbook § 30b04 (Dec. 9, 1988).

Under the H-2A regulations, wages must be paid semi-monthly. 20 C.F.R. § 655.122(m). As a result, under *Biggs*, an H-2A employer must reimburse inbound travel and immigration expense (to the extent

21

those expenses drop the employee's wage below the federal minimum) no later than the first semi-monthly payday after the expenses are incurred. The employer cannot wait until the midpoint of the contract period to pay the employee a minimum wage for the first workweek.

### G. The NCAE's argument concerning travel expenses of United States seasonal workers is an irrelevant diversion from the facts of this case.

NCAE next argues that the DOL's interpretation of the FLSA would require an employer to reimburse travel expenses to a seasonal worker from the United States who travels a long distance to accept a temporary or seasonal job. The DOL, however, has made a considered determination that, on balance, travel expenses for H-2A workers benefit the employer more than they benefit the employee. It also has distinguished an H-2A worker's travel expenses from the travel expenses of a seasonal worker from the United States by pointing to a number of meaningful differences between the two types of employees, and in particular the more significant limitations placed on H-2A workers.

First, the DOL has noted that H-2A jobs are necessarily temporary. DOL Br. at 18. Unlike a worker from the United States, an

H-2A worker cannot remain employed by his H-2A employer on a permanent basis after the conclusion of his work period. *Id.* By contrast a worker from the United States may be hired as a seasonal worker and matriculate into a permanent employee at the end of his or her employment. Second, the DOL has recognized that an H-2A employee is not permitted to quit his job and look for other employment in the area. *Id.* By contrast, a United States seasonal employee may arrive at his seasonal job, quit on the first day, and begin permanent employment with another local employer. *Id.*

Third, the H-2A employee must, in most cases, return to his home country at the conclusion of his H-2A contract. It is true that in some instances an H-2A employer may extend a worker's visa, so that he may remain in the United States after the termination of his initial H-2A contract. However, this is the exception rather than the rule, as it requires the H-2A worker to find another H-2A employer willing to hire him and submit a new H-2A application on the worker's behalf. Moreover, even if an H-2A worker obtains an extended visa to work for another H-2A employer, the analysis of who receives the "primary benefit" of the initial travel and immigration expenses does not change.

The first H-2A employer still receives an exceptional benefit from the expenses, and the H-2A worker's options are still extremely limited. He can only work for his current employer or another H-2A employer that agrees to extend his visa. 8 C.F.R. § 214.2(h)(2)(i)(D). He can *never* use the travel and immigration expenses to relocate to a new domicile within the United States and pursue other endeavors.

At bottom, the fundamental and distinguishing difference between the H-2A worker and the seasonal worker from the United States is that "H-2A workers are not able to use their transportation to the [United States] and their visa to find work generally or to remain in the [United States] after their approved work ends." DOL Br. at 17.[8] By contrast, the United States seasonal worker may use his transportation expenses to obtain other work, and he does not have to return from where he came once his work with his seasonal employer has ended. The DOL's conclusion that an H-2A employee's travel expenses are meaningfully different from travel expenses incurred by a seasonal

---

[8] Additionally, the H-2A application process ensures that the employer receives an exceptionally great benefit by hiring an out-of-state workforce. Indeed, the H-2A application process is designed to ensure that the jobs would go unfilled absent foreign workers being allowed in the United States. *See* DOL Br. at 16.

worker from the United States is reasonable and not plainly erroneous or inconsistent with the applicable regulations.[9] *See Chase Bank*, 131 S. Ct. at 881; *Auer*, 519 U.S. at 461.

## III. The Farmworkers adequately pleaded their breach of contract claim.

In their opening brief, the Farmworkers demonstrated that they adequately pleaded a breach of contract claim by alleging the existence of an employment contract, five separate breaches of that contract, and damages stemming from those breaches. Appellants' Br. at 48-53. In response, Peri does not take serious issue with the fact that the Farmworkers provided enough factual specificity to demonstrate the existence of an employment contract and three specific breaches of that contract:  (1) paying the Farmworkers at an hourly rate below the AEWR; (2) not reimbursing the Farmworkers for gloves that were necessary to perform their work; and (3) not complying with the FLSA's requirement to pay the Farmworkers the minimum wage during their first week of work. In fact, Peri's brief completely ignores the

---

[9] Contrary to NCAE's floodgates argument, there will be no torrent of FLSA litigation by American-born seasonal workers if the Court concludes otherwise. *Arriaga* was decided ten years ago, and no such increase in litigation has occurred.

Farmworkers' contract claims for being paid below the AEWR and not being reimbursed for gloves, effectively conceding that the Farmworkers properly pleaded these breaches.

Instead, Peri questions only with the legal sufficiency of the Farmworkers' breach of contract claim to the extent that it alleges claims for unreimbursed outbound travel and subsistence expenses and reimbursement of inbound travel and subsistence costs for those who have completed fifty percent of the work contract period. Peri is wrong on both scores.

According to Peri, the clearance orders do not require reimbursement of outbound travel expenses, but they plainly do. As the Farmworkers alleged in their Second Amended Complaint, the clearance orders expressly incorporate the H-2A regulations, ER 9 at ¶ 13, 14, and the regulations absolutely require reimbursement of outbound travel and subsistence expenses. 20 C.F.R. § 655.122(h)(2). Indeed, one of the contracts attached to Peri's Motion to Dismiss explicitly discusses this requirement. PR 36. Another contract required Peri to "compl[y] with the requirements at 20 C.F.R. § 655, Subpart B." PR 67. Subpart B includes § 655.122(h)(2), which requires H-2A

employers to reimburse outbound travel and subsistence expenses. Finally, all of the contracts explicitly require Peri to "[c]omply with all applicable Federal, State and local employment-related laws and regulations. . . ." PR 68. *See also* PR 25, 40, 44, 47, 52 ("The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law."). Reimbursing outbound travel and subsistence expenses to H-2A workers is a requirement of federal law and was, therefore, incorporated into each of the contracts. 20 C.F.R. § 655.122(h).[10]

With respect to the Farmworker's breach of contract claim for reimbursement of inbound travel and subsistence costs, Peri argues that the Farmworkers did not adequately allege that they completed fifty percent of the contract period, thus, entitling them to receive their

---

[10] Each of Peri's clearance orders included a promise that Peri would reimburse outbound travel and subsistence expenses, in compliance with § 655.122(h)(2). Indeed, H-2A regulations required Peri to make such a promise. *See* 20 C.F.R. § 655.122(c) ("Every job order accompanying an Application for Temporary Employment Certification must include each of the minimum benefit, wage, and working condition provisions listed in paragraphs (d) through (q) of this section."). The district court recognized as much. ER 25-26 ("When an employer applies to the Department of Labor for H-2A clearance orders . . ., it must certify that it has complied (or will comply) with certain requirements . . . , and Defendant made such certifications in this case.").

27

inbound travel and immigration expenses (which expenses Peri concedes it is required to reimburse under the contract). Peri's argument should be rejected for three reasons. First, Peri raised this argument for the first time in its reply brief in the district court – after the Farmworkers filed their opposition brief and after they filed their motion for leave to file a second amended complaint. Therefore, Peri should be deemed to have waived the issue. *In re Rains*, 428 F.3d 893, 902 (9th Cir. 2005).

Second, even if the twenty-four Farmworkers did not specifically use the words "completed fifty percent" of a contract period in their Second Amended Complaint, they did in fact complete numerous contract periods, and a reasonable person reading their complaint would conclude that it is beyond plausible that they did so. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Paragraph 18 of their Second Amended Complaint alleges that each of the Farmworkers traveled to work for the Defendant during "multiple" seasons, suggesting, at a minimum, that they each came to work for the Defendant and returned after completing at least one contract period. ER 10. Moreover, paragraph 23 of their Second Amended Complaint

28

alleges that "[b]etween February 16, 2005 and the present", the Farmworkers worked in the fields picking onions, and in paragraph 26, the Farmworkers allege that when they "finished working for Defendant", they traveled from Yerington, Nevada to their respective homes in Mexico, and that Defendant did not fully pay for their transportation costs to Defendant's job site to begin their work for Defendant or from Defendant's job site for their return trips home after their work was concluded. ER 12. When the Court construes the Farmworkers' Second Amended Complaint "in the light most favorable to [them] . . . and accept[s] all factual allegations as true", *Hinds Investments, L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011), common sense dictates that the Farmworkers worked at Peri's farm for entire contract periods, and, certainly, beyond the midpoint. *See Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1940 (2009) ("[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.").

Lastly, even assuming that the Farmworkers were obliged to specifically state that they worked for half the contract period, the Court should not have dismissed the Farmworkers' breach of contract

claim in its entirety, given that they adequately pleaded at least four out of five breaches. Rather, the Court should have ruled that the Farmworkers complied with Rule 8(a) of the Federal Rules of Civil Procedure by making a "short and plan statement of the claim [i.e., a breach of contract] showing that the pleader is entitled to relief" and allowed the scope of the breach of contract claim to get sorted out in discovery. *See BLT Restaurant Group LLC v. Tourondel,* No. 10 CV 6488(GBD), 2011 WL 3251536, *5 (S.D.N.Y. July 19, 2011) ("The reality is that Defendants seek to limit the scope of Plaintiff's breach of contract claim; they do not seek to have the claim dismissed based upon legal feasibility. What Defendants seek is improper at this stage of the litigation.").

This Court should reverse the district court's dismissal of the Farmworkers' breach of contract claim.

## IV. The Farmworkers adequately pleaded and did not waive their FLSA claim for reimbursement of recruitment fees.

Peri next argues that the Farmworkers waived their argument that the failure to reimburse the Farmworkers for recruitment expenses violated the FLSA by not raising the argument in the district court. Peri Br. at 25. They also argue that the Farmworkers were required to plead

that the recruitment fees – standing alone – dropped the Farmworkers' wages below the federal minimum. *Id.* Peri is wrong again.

On page four of the Farmworkers' Memorandum in Opposition to Peri's Motion to Dismiss, the Farmworkers argued as follows, "Before the Plaintiffs arrived at Defendant's farm to begin work, they incurred many expenses for Defendant's benefit. Defendant's agents required many of the Plaintiffs to pay a hiring or recruitment fee to be considered for work on Defendant's farm." PR 73. The Farmworkers proceeded on page four to describe the other myriad expenses they incurred before they began working for Peri in the United States. *Id.* Then, in the argument section of their brief, they made clear that the non-reimbursement of all of the pre-employment expenses listed on page four dropped their wage below the federal minimum for their first week of work. PR 75. They did not list each expense again in the argument section of the brief because they had already listed those pre-employment expenses in their statement of facts. Nevertheless, there was no ambiguity that the pre-employment expenses that they were attempting to recoup were listed in the previous section. To ensure there was no confusion about their position, the Farmworkers also

stated in a footnote on page four as follows: "It is unclear why Defendant has labeled these necessary expenses as 'personal', because they were all incurred for the benefit of the Defendant and, in any event, are properly reimbursable under the FLSA and the applicable DOL regulations." PR 73.

Peri also accuses the Farmworkers of not adequately pleading their FLSA claim to the extent that it was based on illegal recruitment fees because the Farmworkers did not allege that "these recruiting fees, standing alone, would reduce a worker's wage below the minimum wage." Peri Br. at 25. The Court should reject this argument because the Farmworkers were not obliged to allege that each expense that they incurred for Peri's benefit dropped their wage below the federal minimum. Rather, the Farmworkers were required to allege that all of the expenses – taken together – dropped their wage below the federal minimum. That allegation is found in paragraph 24 of the Farmworkers' Second Amended Complaint. ER 12. It is plausible that the non-reimbursement of all of the expenses created a minimum wage violation, given that the recruitment fees were between $100 and $500

and the inbound travel and immigration expenses were $400 per person per year. *See* ER 10 ¶¶ 15, 18.

In short, the Farmworkers never waived the argument that Peri's non-reimbursement of their recruitment fees violated the FLSA, and their Second Amended Complaint adequately alleged this violation.

## V.   The District Court prematurely and erroneously ruled on Peri's statute of limitations affirmative defense.

Peri maintains that the district correctly dismissed the Farmworkers' FLSA claims that accrued more than two years before they filed suit. The Court should reject Peri's argument. The district court erred on this point for the simple and fundamental reason that the statute of limitations is an affirmative defense that must be pleaded and proved by a defendant. *See, e.g., United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993). The commonly accepted rule is that a statute of limitations defense cannot be resolved on a motion to dismiss unless the face of the complaint establishes that the claim is time barred. *See Vernon v. Heckler*, 811 F.2d 1274, 1278 (9th Cir. 1988). Because nothing in the Farmworkers' Second Amended Complaint demonstrated their claims were untimely, the district court erred by dismissing the Farmworkers FLSA claims (in whole or in part) on this ground.

33

Moreover, Peri is wrong in maintaining that the Farmworkers never invoked the FLSA's three-year statute of limitations in the district court. They plainly did so. PR 76 at n.3 ("Because every court that has considered this issue, without exception, has recognized the validity of Plaintiffs' FLSA claims, Plaintiffs have also adequately alleged that Defendant's FLSA violations were willful, in that it acted in reckless disregard of its legal obligations.").

Additionally, the district court erred by dismissing the Farmworkers' state law claims that accrued more than two years before they filed suit. As discussed in the Farmworkers' opening brief, their state law breach of contract claim is governed by a six-year statute of limitations, and their claim under Article 16 of the Nevada Constitution is governed by a four-year statute of limitations. Appellants' Br. at 56-59. Although Peri did not even raise a statute of limitations defense with respect to the Farmworker's breach of contract and constitutional law claims, the district court summarily and *sua sponte* limited those claims to two years without any briefing by the parties. It erred in doing so.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's Order.

Dated: March 12, 2012                    Respectfully Submitted,

/s/ Matthew J. Piers

Matthew J. Piers
José Jorge Behar
HUGHES SOCOL PIERS
RESNICK & DYM, LTD.
70 W. Madison Street, Suite
4000
Chicago, IL 60602
Tel: (312) 580-0100
Fax: (312) 580-1994


Mark R. Thierman
THIERMAN LAW FIRM, P.C.
7287 Lakeside Drive
Reno, Nevada 89511
Tel: (775) 284-1500
Fax: (775) 703-5027

*Counsel For Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,930 words according to the word-count function of Microsoft Word 2010, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, using Microsoft 2010, 14-point Century.


Dated: March 12, 2012                   /s/ Matthew J. Piers
                                        Matthew J. Piers

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on March 12, 2012.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated:  March 12, 2012                     /s/ Matthew J. Piers_____
                                            Matthew J. Piers